[Civ. No. 3279. First Appellate District, Division Two.—March 31, 1920.]

## MABEL HILLMAN KELLY, Respondent, v. GREAT WESTERN ACCIDENT INSURANCE COMPANY (a Corporation), Appellant.

[1] ACCIDENT INSURANCE—TERM OF INSURANCE—BELIEF OF ASSURED. Where an application for accident insurance is for insurance for a term of five years, and a collateral note given by the assured obligates him to pay the premium for a term of five years, it cannot be contended that the insurance company did not believe the assured understood its promise to be for the insurance for which he applied and for which he was bound to pay, notwithstanding the insuring clause of the policy issued purports to limit the insurance to a period of one year.

[2] ID.—UNPAID INSTALLMENT — FORFEITURE — PENALTY.—Where such note was payable in annual installments, each installment representing one year's premium payable in advance, which the insurer had the right to collect together with interest and attorney's fees if not paid when due, a forfeiture clause in the policy providing for the release of the insurer from liability during the period between the maturity of an installment and its subsequent payment constituted a penalty in contravention of the provisions of the code relating to liquidated damages in fixing compensation to be made for the breach of an obligation to pay a sum of money on a certain day.

[3] ID.—INTENTION TO ENFORCE PAYMENT—LETTERS TO ASSURED.— Where the insurer, after the second installment of the note became due, wrote several letters to the assured calling his attention to the fact that the payment was past due and requested him to pay it, such letters indicated an intention on the part of the insurer to collect the amount of that installment of the premium for which the assured was entitled to the insurance for the second period of the five-year term.

APPEAL from a judgment of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert Brennan and Carr, Carr & Evans for Appellant.

James S. Bennett and Rives & Rives for Respondent.

BRITTAIN, J.—The insurance company appeals from a judgment for $7,440, with interest, amounting in all to $8,020, against it under an accident insurance policy providing for death benefits in favor of the widow of Luke Kelly, the assured. The form of the policy is unusual. It is described as a "Five Year Term" policy. It was accompanied by a collateral agreement, in effect a non-negotiable note, by which the assured obligated himself to pay a premium of three hundred dollars for five years' insurance, in five annual installments of sixty dollars each, the first installment being payable at the time of the application for the insurance, and each of the other installments annually in advance of the last four successive years of the term. It provided for interest on past due installments at the rate of six per cent per annum and for a reasonable attorney fee in the event of suit. The first installment of sixty dollars was paid, and the second installment became due October 4, 1916. The assured died December 17, 1916, as a result of accidental injuries within the meaning of the policy. At that time the second installment of the note had not been paid. The insurance was for seven thousand five hundred dollars, and the judgment was on a complaint in which the prayer was for $7,440, that being the amount of the insurance less the sixty dollars unpaid under the note.

The insurance company maintains that, under the terms of the policy, the insurance in favor of the widow of the assured on his death had lapsed by default in the payment of the second installment of the premium, and that there was no waiver of the provisions of the policy for forfeiture. The respondent contends that the policy is not a unilateral contract, but a promise of the company to pay the insurance in consideration of a promise on the part of the assured to pay the five years' premium; that the law does not permit the insurer to declare a forfeiture as against the assured while retaining and asserting the right to collect the premium under the note; that the right to rely upon the forfeiture provisions, if it ever existed, was waived by the insurer; and that the provisions for forfeiture are void under section 1670 of the Civil Code, in that the forfeiture clause of the contract is one by which compensation to be paid for a breach of the obligation to pay the second installment promptly was determined in advance of the breach.

It appears, at least from the briefs, that the normal rate of such insurance for a one-year term is seventy-two dollars, which amount includes, of course, the cost of insurance, plus the overhead and agency expense in handling such insurance for one-year periods. The contract fixes the rate for one year at sixty dollars in consideration of the assured guaranteeing the payment of the full premium for five years. In other words, it appears that where the company is compelled to renew its business only once in five years, the overhead cost is reduced at the rate of, at least, twelve dollars a year, that being the amount of the saving to the assured.

The policy is a lengthy one with a large number of provisions couched in technical language, with frequent cross-references from one set of conditions to others in such a manner that any man of ordinary education and intelligence after reading it might well remain in doubt as to exactly what the company promised to do. On the other hand, the policy and the collateral agreement are both very clear in regard to what the assured was to do. He was required to tell the truth in the statements contained in his application; to pay sixty dollars in advance at the time of his application and to pay three hundred dollars in all in the sixty-dollar installments, with interest at six per cent if they were not paid when due, and to pay reasonable attorneys' fees if the money was collected by suit. Despite the fact that the assured was obligated to pay the premium of three hundred dollars for the five years' insurance, the insuring clause purports to insure him for a period of one year. In section 2 of the policy, there is a statement of specific benefits in clear language by which the company undertook to pay within ninety days from the date of accident seven thousand five hundred dollars in the event of the death of the assured by accident. In section 3 there is a long and involved statement headed benefits for loss of time purporting to cover "Weekly Accident Payments," "Weekly Sick Benefits," "Continuous Sickness," "Extra Hospital Benefit," and sickness resulting from a large number of specific causes. In section 4 there is a tabulated list of optional benefits for specific injuries which the assured might claim in lieu of other benefits, ranging from three hundred dollars for fracture of the skull to thirty dollars for the dislocation of the great toe. There is a provision for double benefits for in-

juries while the assured was a passenger on a railway or street railway passenger-car or of a steam vessel. There are additional benefits for surgical operations with a lengthy schedule defining specific operations; then follows a series of special provisions under what is designated section 7 of the contract. Subdivision 1, relating to accidents common to all men, refers specially to disability caused by assaults of burglars, highway robbers, and other unprovoked assaults; subdivision 2 relates to payment for quarantine; subdivision 3, for surgeons' fees paid; subdivision 4, for identification benefits to which reference will later be made; subdivision 5, for limited liability in case the assured changed his occupation; subdivision 6, limited liability for injuries occurring through drunkenness, chronic diseases, etc.; subdivision 7 provides for prorating with the insurer other concurrent insurance; subdivision 8 provides for notice and proofs of loss; subdivision 9, for arbitration of claims denied by the Insurance Company, and subdivision 10 is headed in capital letters "NON FORFEITING PRO-VISION." Further reference will also be made to this provision. Under the next clause, headed "General Agreements," there are numerous subdivisions relating to cancellation, premium payments, maturity of indemnities, change of beneficiary, age limits, modification to comply with state laws, the right of examination of the assured by the representatives of the company, providing against duplication of benefits, and requiring strict compliance with the conditions of the policy.

Subdivision 10 of section 7, being the so-called "Non Forfeiting Provision" is as follows:

"10. NON FORFEITING PROVISION. In case the assured has entered into a written obligation to guarantee the payment of the premium named in the insuring clause hereof for a term of five years (unless this policy shall have been previously cancelled), the Company will be liable during a period of thirty months after suspension hereof for non-payment of any of the installments named in said obligation, to the Assured or his beneficiary, for the benefits specified in paragraph 4, of Section VII hereof, and to the extent of one-half of the several benefits for accidental injury as provided in Section II, III and IV hereof, if such accidental injury is received while the Assured is (1) a

passenger within any railway or street railway passenger-car, or (2) while a passenger on board a steam vessel licensed for the regular transportation of passengers and such injury is due to the wrecking of such car or vessel.''

Paragraph 4 of section 7, thus referred to, is the one in regard to identification benefits, which reads as follows:

"4. IDENTIFICATION BENEFITS. In all cases where the assured enters into a written obligation to keep his policy in force for a term of five years, if during said term he shall become unconscious on account of injury or illness while absent from home or acquaintances and while carrying upon his person the means of identification furnished by the company, the company will, when immediately notified by telegram or other message giving this policy number, pay such additional benefit in a sum not to exceed One Thousand Dollars ($1,000) as may be necessary temporarily to care for the person or body of the Assured during the period of such unconsciousness or until such time as his beneficiary or other friends can be notified of his condition.''

The application, which is headed ''Five Year Term Plan,'' was made a part of the contract of insurance. So much of it as is necessary for the present purpose is as follows: ''I hereby apply for insurance . . . FOR A TERM OF FIVE YEARS. . . . I also understand and agree that the contract between me and the company is entirely in writing, that it is limited to this application, the obligation which I have this day executed for the payment of the premiums for this insurance and the policy of insurance (including any riders that may be attached thereto), except as it may be affected by the table of rates or classification of risks filed by the company with the Insurance Department. . . . I also agree that there shall be retained from any indemnity which may become due the unpaid balance of any premium then due, or of any current premium covered by written note or order.'' The substance of the collateral note has already been stated. Under the signature is printed in parentheses the following: '' (This obligation is not a part of the policy of insurance, but is a separate contract between the assured and the company given for the purpose of securing a lowered rate of premium and other special benefits named in the policy.) '' This parenthetical clause may be disregarded. The note and the policy, each referring to

the other, concerning the same subject matter, constitute but a single contract. (Civ. Code, sec. 1642.) The parenthetical clause contradicts the express terms of the note as signed.

[1] If there is a doubt as to the meaning of the contract one of the rules of interpretation requires it to be construed in the sense in which the insurer believed, at the time of making it, that the assured understood it. (Civ. Code, sec. 1649.) In view of the fact that the application was for insurance for a five years' term, and that the collateral note obligated the assured to pay the premium of three hundred dollars for a five years' term, it cannot be contended that the company did not believe the assured understood its promise to be for the insurance for which he applied and for which he was bound to pay, notwithstanding the fact that the insuring clause purports to limit the insurance to a period of one year. The contract was prepared by the insurer. If, under other rules, any uncertainty in the contract was not removed, it must be construed against the insurer. (Civ. Code, sec. 1654.) Inconsistent words are to be rejected (Civ. Code, sec. 1653), and repugnancies must be reconciled by such an interpretation as will give some effect to the repugnant clauses subordinate to the general intent and purpose of the whole contract. (Civ. Code, sec. 1652.)

Considered as an entirety, by the acceptance of the application of the assured, the insurer undertook, subject to lawful conditions of the policy, to give five years' insurance in consideration of the payment of three hundred dollars, of which sixty dollars was paid at the time of the application, and for the remaining $240, payable in annual installments of sixty dollars each, the company took the note of the assured.

[2] One of the conditions of the contract was that if any installment of the note should not be paid promptly when due, except as to very limited liability for very remote risks, the insurer provided for its release from liability during the period between the maturity of the installment and its subsequent payment, which the insurer retained the right to enforce. This forfeiture clause was contained in that provision of the policy headed "Non Forfeiting Provision." Under the rules, to which reference has been made, if the

contract was ambiguous in this respect, it must be construed most strongly in favor of the assured and his beneficiary. The respondent maintains that this forfeiture clause, designated by the Insurance Company as a nonforfeiting provision, was, in fact, a penalty in contravention of the provisions of the code relating to liquidated damages in fixing compensation to be made for the breach of an obligation to pay a sum on a certain day, while the Insurance Company retained the right to collect the sum at a later date with interest and attorney's fees. Under the terms of the contract a sixty-dollar payment furnished compensation for complete insurance for one year of the five-year term, and further, under the terms of the contract, if the assured had lived, and if he had waited until the last day of the second year for the payment of the sixty dollars with interest, as he had a right to do under the contract, he would have been charged the full amount of sixty dollars for one day's complete insurance, instead of one year's complete insurance. The reservation of the so-called nonforfeiting and trivial provisions did not militate against a claimed forfeiture of the principal object of the contract. The word "forfeiture" is equivalent to the word "penalty." (*Von Buren* v. *Digges,* 11 How. (U. S.) 461, [13 L. Ed. 771, see, also, Rose's U. S. Notes] ; *Stearns* v. *Barrett,* 1 Pick. (Mass.) 443, [11 Am. Dec. 223] ; *Salters* v. *Ralph,* 15 Abb. Pr. (N. Y.) 273; *Muldoon* v. *Lynch,* 66 Cal. 536, [6 Pac. 417] ; *Nakagawa* v. *Okamoto,* 164 Cal. 718, [130 Pac. 707].)

[3] After the second installment became due the Insurance Company in several letters requested payment of the past due installment. In each of them the insurer relied upon the five-year contract. On November 4, 1916, it wrote: "Since you are under obligation to make these payments continuously during the time covered by your five year contract, it is in every way to your advantage to make payment promptly and thus secure the full benefits of your insurance." On November 22, 1916, it wrote: "The check you intended to send us for the payment due October 4, 1916, on your five year contract has not arrived, no doubt forgotten. Why not send it now while you are thinking about it?" On December 14, 1916, the company wrote: "If it is necessary for us to spend an amount equal to the premium in time and expense collecting this bill, it is un-

profitable for us, and if there is an additional expense added on to you, it will really be making a hardship upon you. Therefore, we will ask you to send us to-day your check, draft or money order for $60.00.'' The trial court determined that these letters indicated an intention on the part of the Insurance Company to collect the full amount of the second installment of the premium for which the assured was entitled to the insurance for the second period of the five-year term. This determination on the part of the trial court seems to be entirely justified by the decision of the district court of appeal of the third appellate district in the recent case of *Faris* v. *American National Assur. Co.*, 44 Cal. App. 48, [185 Pac. 1035], and the cases therein cited, particular reference being made to the cases of *Noem* v. *Equitable etc.*, 37 S. D. 176, [157 N. W. 308], and *Murray* v. *Home Benefit Life Assur. Co.*, 90 Cal. 402, [25 Am. St. Rep. 133, 27 Pac. 309].

The appellant relies chiefly on the case of *Gayford* v. *Metropolitan Life Ins. Co.*, 144 Cal. 763, [78 Pac. 258], and similar cases, in which the particular policy under consideration provided clearly for forfeiture for nonpayment of premiums in advance. Those cases appear to have been determined in view of the fact that the insurance which had been paid for had been furnished. In this case the insurer was relying upon its right to collect the note given for the entire five years' premium. It could not take advantage of the contract for payment made for its benefit and relieve itself of the obligation to furnish the insurance for which that benefit, when collected, ought to have paid. Such a construction of its contract would leave the insurer in a position where it might enforce payment of the note, with interest and attorney's fees, if no loss was suffered by the assured and to deny all liability for loss if it was suffered.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 27, 1920.

Shaw, J., Lawlor, J., Lennon, J., Olney, J., and Sloane, J., concurred.