[Civ. No. 5187. First Appellate District, Division Two.—September 3, 1925.]

M. JAKOVICH et al., Appellants, v. ROBERT ROMER et al., Respondents.

[1] SALES—AGREEMENT TO GIVE LETTER OF CREDIT—FRAUD—EVIDENCE. Where a written contract for the purchase of grapes expressly provides that within ten days the buyers are to furnish a bank letter of credit to a specified amount, payable against shipping documents at sight, the facts that, before signing said contract, the buyers distinctly inform the sellers that they are unfamiliar with the English language in general and with letters of credit in particular and express doubt of their ability to provide same, that the sellers assure the buyers that said letter of credit can easily be arranged thereafter as the same is merely collateral protection to the sellers and that the provision for a letter of credit will not be vital to said contract, and that relying upon such assurances the buyers sign the contract, do not constitute fraud.

[2] ID.—EQUITABLE ESTOPPEL—EVIDENCE.—In this action to recover damages for alleged breach of a contract for the sale of grapes, in which the plaintiffs pleaded their failure to furnish a letter of credit as required by their contract, but relied upon certain acts as constituting an equitable estoppel, the facts relied upon by plaintiffs, consisting of telegrams and letters relating to plaintiffs' inability to obtain the letter of credit, fell far short of anything that would constitute an estoppel.

2.  See 10 Cal. Jur. 626.

**[3]** ID.—WAIVER—CONFLICTING EVIDENCE—FINDING—APPEAL.—In such action, one of the plaintiffs having testified to a set of facts relating to his conversations and dealings with the defendants which tended to show a waiver by defendants of the provision of the contract requiring plaintiffs to furnish the bank letter of credit, but the testimony on behalf of the defendants having created a substantial conflict on that issue, the appellate court was not justified in disturbing the finding made by the trial court in favor of defendants.

**[4]** ID.—SALE BY BROKER—FAILURE OF BUYERS TO GIVE LETTER OF CREDIT—RETURN OF DEPOSIT—PLEADINGS—ISSUES—JUDGMENT.—In such action, the evidence having disclosed that defendants were not growers, but were engaged in buying and selling grapes in the capacity of brokers, and that during the year in question they had purchased a large quantity of grapes and had sold them at prices as high or higher than plaintiffs had contracted to pay, plaintiffs were entitled to judgment to the amount of their deposit with defendants on the grapes which they had contracted to buy from defendants, even though their pleading and prayer asked for different and other relief.

---

(1) 35 Cyc., p. 624, n. 21.   (2) 21 C. J., p. 1252, n. 93.   (3) 4 C. J., p. 883, n. 33.   (4) 17 C. J., p. 965, n. 44; 33 C. J., p. 1146, n. 89.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Reversed.

The facts are stated in the opinion of the court.

John R. Tyrrell, Geo. L. Stewart and William E. White for Appellants.

Hugh K. McKevitt, Charles W. Cobb and R. C. Ramsay for Respondents.

STURTEVANT, J.—The plaintiffs commenced an action against the defendants to recover damages for an alleged breach of contract. The case was tried in the trial court without a jury. Judgment was rendered in behalf of the defendants and the plaintiffs have appealed under section 953a of the Code of Civil Procedure.

In their complaint the plaintiffs pleaded the contract. That instrument consisted of two papers as follows:

---

3.   See 2 Cal. Jur. 921; 2 R. C. L. 204.

"Grape Contract.

"This Contract, made between Robert Romer & Company of San Francisco, California, Seller, and Jakovich & Dogan, of Chicago, Illinois, Buyer, Witnesseth:

"Said Buyer hereby agrees to purchase from said Seller and said Seller hereby agrees to sell to said Buyer —twenty— carloads of 1920 crop of California —— vineyard run —— Zinfandels, Missions, Matero, Carrignans and Other Black Grapes in good shipping condition, upon the terms and conditions following:

"Packing: Grapes to be packed in what is commonly known as Los Angeles Lug Boxes, in accordance with the standard required by the Railroad Administration for the loading of cars of said commodity.

"Delivery: To be F.O.B. cars, common shipping-point California, as fast as growing crops compel growers to deliver same. A receipt in good order from the railroad company shall relieve the seller from all further liability.

"Quantity: Twenty car-loads.

"Price: $85.00 per ton F.O.B. cars as above, including lug boxes.

"Deposit: Said Seller hereby acknowledges the receipt of $200.00 (Two Hundred Dollars) per car on account of the above contract-price, and amounting to Four Thousand Dollars. Such deposit to apply upon account of purchase price as deliveries are made at the rate of $200 per car-load. In event of default by the buyer under this agreement said deposit shall belong to, and be retained by the Seller as part consideration for entering into this agreement, and as liquidated damages for such default of buyer. The Buyer shall further furnish the Seller with an irrevocable Bank Letter of Credit to the amount of $21,500.00 within ten days from date of contract, payable against shipping documents at sight, and good until December 1st, 1920.

"Shipping Instructions: Proper instructions shall be furnished by the Buyer to the Seller as requested by the Seller, and the Buyer shall be responsible for any demurrage and damage occasioned by delay in furnishing such instructions.

"Freight Charges: Buyer must arrange to prepay same or furnish the originating line or lines with the regular Perishable Freight Bond acceptable to such railroad line to the amount of the shipment.

"Performance of Contract: The place of performance of the terms and conditions of this contract to be the City and County of San Francisco in the State of California.

"Liability: The Seller shall not be liable for damage or loss in event of crop failures or destruction or damage of crops, nor for Government regulations or restrictions which may interfere with shipment of the grapes covered hereby; nor for matters interfering with or affecting the carrying out of this agreement which are beyond the reasonable control of the Seller.

"Executed in duplicate at San Francisco, California, this sixteenth day of June, 1920.

"(Signed) JAKOVICH & DOGAN,

Buyer.

"By MICHAEL JAKOVICH,

"(Signed) ROBERT ROMER & COMPANY,

Seller.

"By ROBERT ROMER.

"San Francisco, June 16, 1920.

"Jakovich & Dogan

"Chicago, Ill.

"Gentlemen:

"Referring to our contract of twenty cars of grapes, entered into on the 16th day of June, beg to state that the contract in question is understood by us to give you the right of inspection of said cars at point of origin as to said grapes being in accordance with contract.

"In case of a disagreement between us as to quality, it is understood and agreed and made part of the contract above referred to that an inspector from the State Horticultural Commission of California shall decide as to the quality of the grapes, and his decision shall be final and binding on both parties.

"It is also understood and agreed that if you are not there at the point of origin at the time of shipment that you waive inspection.

"It is also further agreed that we shall refund at the rate of $200.00 (Two Hundred Dollars) a car for any and all cars not shipped on the contract herein referred to, if we are unable to ship same for reasons beyond our control as particularly set forth in our contract under the clause of *liability,* or for any reason no fault of the buyer. However,

said stipulation herein mentioned not to be in force and effect if the buyer refuses to accept delivery under the terms and conditions of the contract herein referred to.

"It is also understood and agreed that ten (10) cars of the above twenty will originate out of Santa Cruz County, California, or equally as good a district and the other ten cars out of the Lodi district or other early shipping district.

"Cordially yours,

"(Signed) ROBERT ROMER & COMPANY,

"By ROBERT ROMER.

"I hereby accept the above modifications to the contract herein referred to.

"(Signed) JAKOVICH & DOGAN,

"By MICHAEL JAKOVICH."

The plaintiffs also pleaded that they had done and performed all conditions by them to be performed except that portion of the contract which reads as follows: "The buyer shall further furnish the seller with an irrevocable bank letter of credit to the amount of $21,500 within ten days from date of contract, payable against shipping documents at sight, and good 'until December 1, 1920." As to that passage the plaintiffs inserted in their pleading a statement that said condition had not been performed by them and thereupon they allege (1) certain acts as constituting fraud; (2) certain acts as constituting an equitable estoppel, and (3) certain acts as constituting a waiver. These excuses were pleaded in paragraphs 6, 7, 8, 9 and 10 of the complaint. The answer of the defendants put all of said matters in issue and the trial court made findings "that all of the allegations of paragraphs 2, 5, 6, 7, 8, 9, 10 and 11 are untrue."

The appellants claim that the trial court erred in making a finding against the appellants on each one of said excuses.

[1] The facts constituting the alleged fraud as stated by the appellants were that before signing said contract at San Francisco on the sixteenth day of June, 1920, plaintiffs distinctly informed defendants that said plaintiffs were unfamiliar with the English language in general and with letters of credit in particular and expressed doubt of their ability to provide same; that the defendants assured the plaintiffs that said letter of credit could be easily arranged

thereafter as the same was merely collateral protection to defendants and that the provision for a letter of credit would not be vital to said contract; that relying upon such assurances plaintiffs signed the contract. No other declaration, representation or act is alleged as constituting fraud in the inception of the contract. The acts enumerated did not constitute fraud. (Civ. Code, sec. 1572.)

[2]   It will be noted that the contract was executed on the sixteenth day of June, 1920. By the terms of the contract the letter of credit should have been furnished "within ten days from date of contract," that is on or before June 26, 1920. Shortly after the contract was executed Mr. Jakovich went to Chicago. On arriving there he endeavored to obtain the letter of credit. Failing to do so, on June 25th he telegraphed to the defendants as follows: "First National Bank not knowing me intimately does not wish to extend credit of $20,000. They believe can finance the deal without credit." The defendants, on June 26th, the last day provided in the contract for furnishing the letter of credit, answered by a telegram as follows: "Your telegram 25th received and in the meantime await your advices by mail. However in the meantime wish to assure you of our good will to assist you in any way we are able. Our Mr. Romer hopes to leave for Chicago in about two weeks." On June 28th the plaintiffs wrote the defendants, "I received your telegram today, June 28, 1920. We understand that you will be in Chicago in two weeks. Please let me know what day you will arrive and I will arrange to meet you. When you come to the city we will talk about the bank business. Please let me know how the price of grapes are going. I understand from a friend of mine that the price is going higher. My banker tells me that monthly deposits are necessary to get a letter of credit." It will be noted also that the letter was written two days after the time stated in the contract within which the letter of credit should have been furnished. The record discloses the fact that Mr. Romer did not go to Chicago. No other communications were had between the parties before September 14th. On the date last mentioned Mr. Jakovich came to San Francisco and during the succeeding two weeks he had many conversations with Mr. Romer. We think it is quite clear that the foregoing facts fall far short of anything

that would constitute an estoppel.' (10 Cal, Jur., p. 626, sec. 14.)

[3] After Mr. Jakovich arrived in San Francisco he immediately called upon Mr. Romer. The conversation that followed he testified was as follows: "I spoke to him about the letter for credit. I told him everything what the bank told me, that they do not furnish me letter for credit. Mr. Romer said, 'Well, I will tell you a letter for credit is only a promise, we can do business just the same.' He said he did not buy any grapes from Lodi and Santa Cruz County and he is going to furnish me grapes from Healdsburg district, and that I should wait one week or two that the grapes is not ripened. He did not say anything to me about the $4,000. I will be glad if he say something, and then I have a chance to buy grapes and do the business, but he always keep me off. He was very friendly to me, very gentlemanly all the time. He told me why he could not give me grapes from Lodi because they were sunburned and he did not buy them. He said the Healdsburg district is better class of grapes. He did not say anything as to how I was to pay for grapes, now that I was not to furnish the letter of credit. As to the payment for the grapes that were to be furnished we was standing on the contract. I am going to pay for the grapes after they pass inspection and I will pay before the car leaves California. He is complaining there is a shortage of cars and he asks me if he gets enough cars. Then I said I was going to some friend and I will try to get some cars. When I was ready to take cars he called a gentleman from the insurance company who took me to the office of the Lyon Bonding Company for the bond to secure the freight money for twenty cars and I pay $110 for the bond. Mr. Romer put the shipping points on the surety bond. I was pretty near every day, every second day, in his office. Always he delayed. He always delayed—'the grapes is not ready yet,' and he says 'another four days, another two days,' and so forth. He never said anything about the contract. He always says he is going to deliver the grapes." On the eleventh day of October, 1920, the defendants served a written notice that the buyer was in default and that the rights of the buyer under the contract had been terminated and ended. The defendants called Mr. Romer as a witness and he testified: At the time the contract was being pre-

pared he showed to Mr. Jakovich and to Mr. Stewart a form of letter of credit which he had theretofore used and explained the necessity for such a paper. He further testified that the plaintiffs never tendered the defendants cash to cover the twenty cars of grapes. They did not tender the defendants security, or letter of credit, or money, or anything else to secure the payment for the twenty cars. At all times after the transaction and the failure to supply the letter of credit even after the ten days had elapsed the defendants were ready and willing to give the plaintiffs the grapes had they produced the cash or the letter of credit, and even then the defendants were asking the plaintiffs if they could get the security, get the money, or the cash and put it up so defendants could get the grapes for them. Grapes in the Lodi district come in in the latter part of August and in the Modesto district. But in northern counties they come in later and in the mountain counties still later. The defendants never agreed with the plaintiffs' to eliminate the letter of credit as one of the conditions precedent to their taking delivery of the cars. The witness Romer further testified: "I told him (Mr. Jakovich) when he came back about September 14—that is the time—and he came in the office there and he did not know how to bring up the subject matter, and finally he began to apologize about not putting the letter of credit up, and I told Mr. Jakovich then and there that the contract distinctly provided for that, and that the contract was terminated and canceled. Between June 20th and September 14th Mr. Jakovich was in Chicago and I was in San Francisco. The only way I had of communicating with him was by letter or telegram. I did not, by letter or telegram, advise Mr. Jakovich that the $4,000 was forfeited."

While there is other evidence in the record it is not necessary to recite it. From what we have quoted we think it appears that on the issue of waiver or no waiver the evidence was conflicting, to say the least, and that the record is not in a form that will justify this court in disturbing the finding made by the trial court on the issue as to waiver.

[4] The appellants contend that in any event the judgment of the trial court should have been in favor of the appellants to the amount of $4,000 which they had deposited with the respondents. We think this contention must be

sustained. The evidence discloses that Mr. Romer was not a grower of grapes but that he was engaged in buying and selling grapes. It also discloses that during the season of 1920 he purchased a large quantity of grapes in California and that he sold them at prices as high or higher than the appellants had contracted to pay. It is quite clear that in this transaction he was acting in the capacity of a broker. All of the facts considered, the case is ruled by the doctrine stated in *Biescar* v. *Pratt*, 4 Cal. App. 288 [87 Pac. 1101]; *McInerney* v. *Mack*, 34 Cal. App. 153 [166 Pac. 867]. Replying to this point, the respondents take the position that the appellants, by their pleading and prayer, asked for different and other relief than the return of the $4,000 deposited. Be that as it may, such relief was embraced within the issue and the plaintiffs were entitled thereto. (Code Civ. Proc., sec. 580.)

The judgment is reversed.

Langdon, P. J., and Nourse, J., concurred.