**HANNA NIELSEN S. S. CO. (Dampskibs-Aktieselskabet-Hanna Nielsen) v. HAMMOND S. S. CO. et al.**

**LUISE NIELSEN S. S. CO. (Dampskibs-Aktieselskabet-Luise Nielsen) v. SAME.**

**NIELS NIELSEN S. S. CO. (Dampskibs-Aktieselskabet-Niels Nielsen) v. SAME.**

Circuit Court of Appeals, Ninth Circuit. April 1, 1929.

No. 5668.

Irving H. Frank and Nathan H. Frank, both of San Francisco, Cal., and Ray Howard, of Los Angeles, Cal., and William H. Hunt, of San Francisco, Cal., for appellants.

George S. Hupp and Frank C. Hill, both of Los Angeles, Cal., for appellees.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

DIETRICH, Circuit Judge. In the court below three suits were consolidated for trial, and they are brought here upon a single record. The three appellants were plaintiffs, and will hereafter be so designated. They are Norwegian corporations and at the times herein mentioned were severally the owners of three steamships, the Hanna Nielsen, Niels Nielsen, and Luise Nielsen. On February 27, 1924, they severally entered into three identical contracts with the defendant Hammond Steamship Company by the terms of which they agreed to sell and the latter agreed to buy each of the ships for $200,000. Under each contract a deposit of $20,000 was made by the purchaser with the National City Bank of New York to the joint account of the parties, to be held and turned over pursuant to the terms of the contract and an escrow agreement in substantial accord therewith. These deposits, still in the custody of the bank as escrow holder, constitute the principal matter in controversy; each plaintiff claiming one, and defendant Hill claiming all. The bank asserts no proprietary interest, and by the Hammond Steamship Company it is stipulated that Hill has succeeded to such rights, if any, as otherwise it would have. With a single exception, to be specifically noted, a statement of the facts in respect to the Hanna Case will suffice for all.

On February 27, 1924, the Hanna Nielsen, then trading, was bound for the Pacific Coast. While in the first paragraph of the contract there are terms of absolute sale and purchase, it is therein later provided that at the first port of call of the steamer on the west coast of the United States or Canada the purchaser was to make a full inspection afloat and afterwards immediately declare whether it accepted or refused, and upon acceptance the purchase was to become absolute. Other provisions as to drydocking, etc., are presently immaterial. The purchase price of $200,000 was "payable as follows: A deposit of 10 per cent. of the purchase money on signing the contract, to be placed on deposit at the National City Bank, New York City, New York, in the joint names" of the contracting parties, and the balance "by cash in full immediately upon delivery of the steamer." The transaction was to be consummated by the delivery of the vessel, together with a legal bill of sale therefor, and the full payment of the purchase price. The vessel was to be at the "risk and expense of the purchaser from the date on which the balance of the purchase price becomes payable." "Failing the due payment by the purchaser of the purchase money as herein provided, the deposit shall be forfeited to the sole use of the vendor, who shall be at liberty to sell the steamer by either public or private sale, and any deficiency between the amount realized and the

amount due shall be borne by the purchaser, together with interest at the rate of 6 per cent. per annum and all expense of such resale." In case of default by the vendor, any amount theretofore paid, with interest, was to be repaid the purchaser, without prejudice to its right to recover damages and enforce specific performance. Loss of vessel before date fixed for delivery was to be at vendor's risk, and thereupon the contract was to become void, with the right in the purchaser to recover the deposit.

A few days after the contract was executed the deposit was made, and the bank was furnished an escrow agreement which, after reciting the general terms of the sale, provided that, upon acceptance by the purchaser of the bill of sale, it was to deposit in the bank "to the credit of the vendor the remainder of the purchase price, namely, $180,000. * * * and authorize the * * * bank to surrender and release to the vendor the said escrow deposit of $20,000." In the event the vendor was unable to make good the delivery of the vessel, or the purchaser declined to go forward after making inspection afloat, the deposit, with interest, was to be refunded to the purchaser, and in the event the purchaser failed "to make final payment" the "escrow deposit," together with interest thereon, was to be "forfeited to the vendor as set forth in the purchase agreement."

The only differentiating fact is that in due course thereafter the purchaser inspected and "accepted" the Hanna Nielsen and the Niels Nielsen, but did not accept the Luise Nielsen. In respect of the Luise Nielsen the vendor made tender for inspection but upon the question whether an inspection was ever made as contemplated by the contract, the evidence is not entirely clear. Admittedly, as to the first two vessels, the purchaser breached its contracts and such rights, if any, as the contracts conferred upon the vendors touching the $20,000 deposits had accrued to them at the time these suits were commenced.

The suits are in equity, and one of the points in controversy throughout has been the question of equitable jurisdiction. Just what conclusion the lower court reached upon the subject is not made entirely clear by the memorandum decision, but apparently the view was taken that plaintiff had an adequate remedy at law, and the complaint was dismissed upon that ground. But the court did entertain jurisdiction of defendant Hill's cross-complaint in which he asserted ownership of and the right to receive the $20,000 and granted him the relief for which he prayed, thus incidentally adjudicating that plaintiff was without any rights in respect thereto. Whatever may have been the scope of the court's view on the subject, in order to sustain the decree in his favor, Hill must concede that in determining the conflicting claims of the parties touching the $20,000 the court was in the exercise of its jurisdiction, and to that extent obviously the case was brought within the court's cognizance as fully by the bill as by his counterclaim or cross-bill. Accordingly we find in the brief he has filed here an express declaration to the effect that, in so far as concerns the deposit and the prayer to have the same adjudged to be plaintiff's property, and the further prayer for a decree compelling him and the Hammond Company to join in an order authorizing the escrow holder to turn over the deposit to plaintiff, and to compel the defendant Pacific Southwest Trust & Savings Bank to return to plaintiff the bill of sale which had been deposited with it for ultimate delivery to the Hammond Company, the plaintiff's bill "presents a proper case for the interposition of the equity side of the court."

■ Accepting this as a correct view of the jurisdictional question, we proceed to consider whether it was error for the court to dismiss the bill absolutely and relegate the plaintiff to an action for damages for relief against the Hammond Company. The contracts were made in California and appellee's argument in support of the dismissal rests largely upon the application to them of sections 1670 and 1671 of the Civil Code of that state. These sections in effect declare that, except in a case in which, from its nature, "it would be impracticable or extremely difficult to fix the actual damage," any provision in a contract "by which the amount of damage to be paid, or other compensation to be made, for a breach" of any obligation thereof, is determined in advance, shall "to that extent" be deemed void. Several decisions are cited from the appellate courts of the state construing and applying these sections where differing conclusions rest upon distinctions of fact which, if substantial, are in some cases admittedly very narrow. See Glock v. Howard, 123 Cal. 1, 55 P. 713, 43 L. R. A. 199, 69 Am. St. Rep. 17; Tomboy Gold & Copper Co. v. Marks, 185 Cal. 336, 197 P. 94; Tuso v. Green, 194 Cal. 574, 229 P. 327; Neher v. Kauffman, 197 Cal. 674, 242 P. 713; Green v. Frahm, 176 Cal. 259, 168 P. 114; Biescar v. Pratt, 4 Cal. App. 288, 87 P. 1101; Kelly v. Great Western Acc. Ins. Co., 46 Cal. App. 747, 189 P. 785; Jakovich v. Romer, 74 Cal. App.

333, 240 P. 39; Thomas v. Anthony, 30 Cal. App. 217, 157 P. 823; Long Beach v. Dodge, 135 Cal. 401, 67 P. 499; Wright v. Rodgers, 198 Cal. 137, 243 P. 866. Also, Muskegon Steamship Corp. v. Fisk, 200 App. Div. 621, 193 N. Y. S. 463; Glass v. Banca, 122 Misc. Rep. 637, 204 N. Y. S. 636; Seidlitz v. Auerbach, 230 N. Y. 167, 129 N. E. 461.

We do not attempt an analysis of these decisions with a view to harmonizing them. Manifestly they furnish no clear rule by which the statutory provisions may with certainty be applied to the instant contracts, and in view of the position assumed by the parties here, nice distinctions are not necessary. At the outset plaintiff conceded, and it still concedes, that it cannot successfully claim the deposit as a forfeiture or penalty, or as liquidated damages, and that is, in part at least, the contention of appellee. Without discussion, therefore, we may say that the case does not fall within the statutory exception, and that, construed as declaring a forfeiture or fixing a penalty or setting up a measure of damages, the clauses in the contract and escrow agreement purporting to provide for the disposition of the deposit in case of a default by the purchaser are ineffective for any such purpose. Nor do we agree with plaintiff that the case is essentially like one where the purchaser has actually paid to the vendor a part of the purchase money, and subsequently upon his own default seeks to recover it.

True, the deposit is in a sense so referred to, but, when we consider the whole contract in an effort to discern the real intent of the parties, we are constrained to the view that it was put up as security to assure performance by the purchaser. It was not paid to the vendor, or even so deposited as to authorize its payment by the bank, without further affirmative authorization from the depositor. To hold that the purchaser is the absolute owner would be in effect to disregard the spirit and purpose of the statutory provision. If it is the owner of the $20,000, it would under like reasoning be the owner of $180,000, had 90 per cent., instead of 10 per cent., been so deposited. But it is still the owner and in possession of its steamship, and we do not think it was contemplated that it would profit by the purchaser's default, but should only be protected against loss therefrom.

It follows that its interest in the deposit is that of a lienor, and not an owner, and the extent of its lien is to be measured by the amount of its loss. The contract itself provides that in case of the purchaser's default, the vendor might sell the vessel at either private or public sale and charge the deficiency, together with interest and expenses of sale, to the purchaser. Such a sale it has not made, but it alleges that it could not sell without suffering a loss of at least $50,000. This may possibly be taken as an indirect allegation that at the time the purchaser defaulted, and subsequently, the vessel was worth on the market not to exceed $150,000. But if, upon this ground, the bill be assumed to be vulnerable to a direct attack, we do not think the consideration alone could justify its dismissal under the circumstances here shown. No motion was made by the defendant challenging the sufficiency of the pleading or asking for greater certainty, and at the outset of the trial counsel stipulated that in the event the plaintiff established a right to recover, the question of damages should be sent to a master. For that reason alone the court did not hear evidence upon that issue.

If it be true that a sale for more than $150,000 was impossible, we can see no reason why plaintiff should be required actually to sell the vessel before it may enforce its lien upon the deposit. Such a sale was provided for as a permissive, but not as an exclusive, course. The only question of interest to the purchaser is what the ship might have been sold for on the market; that is, what was its highest market value. It is of no concern to it whether or not a sale was actually made, for the highest market value is presumably all that would have been realized from a sale.

If, as we hold, plaintiff has a lien on the deposit for the amount of the damage it suffered by reason of the purchaser's default, there is no apparent reason why the court upon its equity side did not have jurisdiction to determine the issues involved in the assertion and enforcement of the lien, including the issue of damages. True, an action for damages is ordinarily one at law. But so is an action upon a promissory note or upon a builder's contract. But if the note is secured by a mortgage or the claim under the contract by a statutory lien, the whole issue becomes one of equitable cognizance. From these views it follows that the decrees in the Hanna and Niels Cases must be reversed, and the causes remanded for further proceedings, with leave to plaintiffs to amend their bills, if they are so advised.

As to the Luise, the court below found that the purchaser never accepted the steamship and the finding is undoubtedly correct. Plaintiff contends that the purchaser

could not arbitrarily decline to accept, but the difficulty is that the contract furnishes no basis for an application of the rule of reason. It provides no standard for the exercise by the purchaser of its option to accept or reject, nor does it suggest that if the ship was of a certain character, capacity, or condition the purchaser was bound to accept. Hence the court would have no basis upon which to determine whether or not it should have accepted. In short, the contract seems in effect to be nothing more than an option, to become binding upon the purchaser only if and when it "accepted" the vessel. True, it obligated the purchaser to inspect, but if, upon inspection, it had the right arbitrarily to reject, the neglect or failure to inspect would seem to be inconsequential. The decree in this case will, therefore, be affirmed.

Plaintiffs will be awarded two-thirds of their costs on appeal against the defendants Hill and the Hammond Company, and the defendants Hill and Hammond Company will be awarded one-third of their costs against the plaintiffs.