PATRICK C. KELLY, ADMINISTRATOR, APPELLEE, V. PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT.

FILED APRIL 30, 1936. No. 29660.

*Hall, Young & Williams*, for appellant.

*Emmet L. Murphy* and *Kenneth G. Harvey*, contra.

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

, Goss, C. J.

At the close of the evidence, both parties moved for a directed verdict. The court sustained plaintiff's motion.

October 1, 1913, defendant issued a twenty-payment life policy for $3,000 to Thomas M. Kelly, for a premium of $69.78, payable annually. He paid 19 annual premiums. At the end of the nineteenth year the policy had a cash surrender and loan value of $1,191, as shown by the printed table which is a part of the policy. The last or twentieth premium payment came due October 1, 1932. It was never paid in cash, but plaintiff claims the insured was entitled to credits which would have paid it in a manner hereinafter set forth. The insured died on April 17, 1934.

The insured had borrowed on his policy in 1921, 1922, and 1923. In the nineteenth year, on November 17, 1931, he paid off his previous indebtedness on his policy by borrowing the full cash surrender or loan value of $1,191 at the end of the nineteenth year, October 1, 1932, and took out the entire value of his policy by receiving a check for $466.82. This left his policy with the premium paid for the nineteenth year and with the interest paid on the loan to October 1, 1932. Nothing further was ever paid in cash by or for the insured.

As of October 1, 1932, a dividend of $19.71 was allowed on the policy. The premium due on that date was $69.54 (it having been reduced from the original $69.78), so the money to pay this premium was short $49.83 of the necessary amount.

The insured was notified by the company that he had a dividend of $19.71, and that this would reduce the net premium to $49.83, but he paid no attention to it. The interest on his loan of $1,191, at 5 per cent. per annum was contracted to be paid in advance on each anniversary of the policy, so there was due $59.55 in interest on October 1, 1932, if he desired to keep both the policy and the loan in force and good standing.

When the insured failed to pay the October 1, 1932, premium in advance, defendant followed the provision of

the policy, lapsed the original policy of $3,000, and gave the insured for his $19.71 automatic extended insurance for one year and 47 days from October 1, 1932. This extended his insurance so that it expired on November 17, 1933. The extended insurance was for $3,000 (the face of the policy) less $1,191 (its gross cash surrender value) and was based upon the net term rate for the resulting $1,809 of insurance at insured's attained age of 41 years.

The terms of the policy as to advances or loans seem to comply with the provisions of the eighth subdivision of our section 44-602, Comp. St. 1929. Indeed, an insurance policy must be considered as containing provisions required by statute to be included in it. *Campbell v. Columbia Casualty Co.*, 125 Neb. 1, 248 N. W. 690.

But plaintiff contends that there was more than sufficient loan value in the policy on October 1, 1932, to pay the twentieth and last premium, and that it was the duty of the company to apply so much as was necessary of the increased loan value of the twentieth year toward the payment of this last premium, thus giving the insured a paid-up policy for all time until his death.

To arrive at his conclusion, plaintiff has to argue that the total cash surrender or loan value of the policy at the *end* of the twentieth year should be credited as of October 1, 1932, which was the *beginning* of the twentieth year. That value is $1,284, which is $93 more than the $1,191 value at the end of the nineteenth year, all of which was exhausted by the loan in existence. This all arises from the increase of reserve. The increase of reserve does not and cannot come until the end of the year. This increase must come from only two sources: First, a premium paid annually in advance, as provided by our statute and by the insurance policy; second, earnings on the previous reserve.

The statute recognizes this situation. It provides as a condition precedent to granting a loan of the "reserve at the end of the current policy year and on any dividends in addition thereto" that the company will deduct (1) "any existing indebtedness on the policy," and (2) "any unpaid

balance of the premium for the current policy year," and (3) "may collect interest in advance on the loan to the end of the current policy year." Comp. St. 1929, sec. 44-602, subd. 8. We find no way in which the $93 of increased loan value due at the end of the twentieth year can be used without first paying the $69.54 annual premium due in advance for that year and without paying in advance the $59.55 interest on the $1,191 borrowed the year before. This is as provided by the statute and by the policy. There was in the hands of the company only the $19.71 dividend due October 1, 1932. As we have seen, that was applied to extended insurance under the automatic extended insurance feature of the policy. It expired before the death of the insured.

In a very similar case, where 18 premiums had been paid on a twenty-payment life policy, a court held that, where the insured borrowed the full cash value of a life policy, made no further premium or interest payments, and the remaining loan value would not have paid accrued premiums and interest, the policy lapsed. The policy should be construed most favorably to the insured, but courts cannot make contracts. *Great Southern Life Ins. Co. v. Kirkpatrick*, 48 S. W. (2d) (Tex. Civ. App.) 759.

The motion of defendant for judgment should have been sustained. The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.