## Life & Casualty Ins. Co. of Tennessee v. Wheeler.

(Decided June 5, 1936.)

270

MOREAU P. ESTES for appellant.
CALDWELL & GRAY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On October 15, 1929, the appellant and defendant below, Life & Casualty Insurance Company of Tennessee, issued and delivered to James T. Wheeler an insurance policy on his life in which it agreed, upon conditions therein specified, to pay to the beneficiary therein named, who was insured's wife and the appellee and plaintiff below, Maggie Wheeler, the sum of $5,000. The premiums were agreed to be paid quarterly in advance, the first one being paid at the time of the delivery of the policy. The others were due each three months thereafter, which made them payable on the 15th of January, April, July, and October of each year in installments of $11.87 for the first five years of the life of the policy, and like installments of $23.74 thereafter. All quarterly payments were made by the insured up to and including October 15, 1932, and the one made on that day carried the insurance until January 15, 1933; but the one due on the latter date was never

paid. The policy provided for a grace period within which any premium might be paid after default "of not less than 30 days * * * during which time the insurance shall continue in force," but if the premium was not paid during that time, "then this policy shall immediately cease and become void."

The policy also contained these nonforfeiture provisions: "After three full annual premiums shall have been paid, if default be made of any payment of any subsequent premium, this Policy shall automatically at time of lapse be unconditionally commuted to nonforfeitable paid-up insurance as provided below, payable at the same time, and on the same terms, save as to amount, as this Policy. Within ninety days after the said commutation, the Insured, in lieu of this automatic unconditional nonforfeitable paid-up insurance, may upon written demand addressed to the Home Office of the Company receive either of the following options: 1. Receive the cash surrender value of this Policy, less any indebtedness to the Company hereon. The cash surrender value shall be the reserve on this Policy at the date of default, less a surrender charge, which in no case shall be more than two and one-half per cent., of the sum insured; or 2. Receive extended insurance from date of default for an amount equal to the face of this Policy, for such term in years and days from the date of default as is provided below, but without the right to loans and cash surrender value."

The automatic commuted benefit therein provided for, following default in the payment of the quarterly premium due January 15, 1933, was of no value, since the age of the policy had not accumulated sufficient reserve, after stipulated deductions, to pay for nonforfeiture paid-up insurance, and it was so stipulated in the table of valuations made a part of the policy "as provided below." It was also shown in that table of benefits and values that (referred to as "provided below") the policy at the time of the insured's death had no cash or loan value. But in the third column of the table, under the heading of "Extended Insurance," a period of sixty days was inserted.

The insured died on March 19, 1933, but he at no time following the default in payment of the premium due January 15, 1933 (which was the commencement of the commutation period provided for), attempted to

exercise the option therein given him to take the cash surrender value of the policy in lieu of the automatic commuted insurance, or to receive extended insurance for the sixty days following default in the payment of his premium. After his death, plaintiff, his beneficiary, attempted to exercise the option for extended insurance, within the ninety-day provision that the insured could have done, but which he did not do. Defendant, under the stated facts, denied liability and this action against it by plaintiff in the Boyd circuit court to recover the face value of the policy followed.

The answer as amended relied on two defenses: (1) That the provided for option to take and receive extended insurance for the sixty days, following default in payment of the premium, was personal to the insured and, if not exercised by him within the stipulated period (ninety days after automatic commutation), it could not be exercised by his beneficiary after his death, since, as contended, the right to do so did not survive to her; and (2) that if mistaken in defense (1) and if the extended insurance automatically attached, then the sixty-day period of extended insurance began upon the default in the payment of the quarterly due premium on January 15, 1933, and that the extended period expired on March 15, of the same year, the insured dying four days thereafter. The answer as amended—rather in fortification of the specified defenses than as an independent one—also averred that it was the uniform rule of all insurance companies in the United States under standard tables of insurance, in policies containing similar provisions as the instant one, to "calculate the extended insurance from the due date of the premium and not from the end of the grace period," and that its "policy terms and valuations are made solely upon the basis that such extended insurance will run from the due date of the premium—in this case January 15, 1933—and not from the end of the grace period." It was further averred that such alleged universal rule was actuarially correct, and is the one approved and followed by the "Insurance Department of Kentucky." The court sustained plaintiff's demurrer filed to the answer as amended, and defendant declining to plead further, judgment was rendered against it in favor of plaintiff for the amount of the policy, and, seeking a reversal of that judgment, it prosecutes this appeal.

The contentions of plaintiff in avoidance of the two interposed defenses were and are: (a) (Responding to defense 1), that there was no paid-up benefit due the insured whereby he was entitled to any paid-up insurance; nor did it have any cash surrender value, and the only actual benefit to which he was entitled was the sixty days extended insurance; hence, there was no alternative for him to choose between in order to exercise the option, and, consequently no necessity that it be done by him; and (b) (in response to defense 2) that the extended insurance for the stipulated period of sixty days commenced, not immediately following the default in payment on January 15, 1933, but following the expiration of the thirty-day period of grace given by the policy, which would make the extended period begin on February 15 of that year, before the expiration of which the insured died. It will, therefore, be seen that the issues are chiefly if not exclusively legal ones and are sharply drawn.

Avoidance (a) impliedly admits that the option for extended insurance, in the circumstances of this case, was personal to the insured, and, unless exercised by him before his death, it could not thereafter be exercised by plaintiff as his beneficiary. If, however, no such admission could be implied, then we are convinced that the law on that question is as contended for by counsel for defendant, and which was so held by us in the case of Michigan Mutual Life Insurance Co. v. Mayfield's Adm'r, 121 Ky. 839, 90 S. W. 607, 28 Ky. Law Rep. 825. The construction given by our opinion in that case, and others cited therein, would undoubtedly sustain defense (1) if there had been any other values issuing from the policy than the sixty-day period of extended insurance. However, as we have seen, there were none, and it is doubtful if it could be said that the insured, as the holder of the option, would be required to exercise it when there were no alternatives between which he would be required to choose in its exercise. Because of such doubt, and because of the conclusion we have reached with reference to defense (2), we have determined not to decide the legal issue so raised by avoidance (a) with reference to defense (1), but to pass its consideration without further comment.

We have concluded that defense (2) is available to defendant, and that the court erred in sustaining the

demurrer to that part of the answer relying upon it. The question was, in effect, so determined by us in the case of Fidelity Mutual Life Insurance Company v. Price, 117 Ky. 25, 77 S. W. 384, 25 Ky. Law Rep. 1148, and the reasoning employed in the Michigan Mutual Life Insurance Company Case, supra, at least implies a similar interpretation. See, also, the cases of Nederland Life Insurance Co. v. Meinert, 199 U. S. 171, 181, 26 S. Ct. 15, 50 L. Ed. 139, 4 Ann. Cas. 480; Joyner v. Jefferson Standard Life Insurance Co. (C. C. A.) 53 F. (2d) 745; Wilkie v. New York Mut. Life Insurance Co., 146 N. C. 513, 60 S. E. 427; Cochran v. National Life & Accident Insurance Co., 167 Tenn. 95, 66 S. W. (2d) 996; Hutchinson v. National Life Insurance Co., 196 Mo. App. 510, 195 S. W. 66; Missouri State Life Insurance Co. v. Carey (Tex. Com. App.) 276 S. W. 227; Bankers' Life Co. v. Burns (C. C. A.) 30 F. (2d) 327, and our late domestic case of Inter-Southern Life Insurance Co. v. Omer, 238 Ky. 790, 38 S. W. (2d) 931, 935. The text in volume 2 of the Second Edition of the Law of Insurance by Joyce, in section 1109, states the rule as contended for by defendant in this language: "Such extension of time simply amounts to an agreement not to enforce a forfeiture if the premium is paid within the extended time; it postpones payment for that period and does not constitute a waiver or forfeiture or excuse payment."

The grace or extension payment period in the Omer Case, supra, for the payment of the premium that was in default, was evidenced by what is designated in the opinion as a "blue note"; whilst the extended period for such payment in this case is found in the "grace" clause of the policy. It was held in that case that the period covered by the blue note, and the period of extended insurance ran concurrently. In order for that to be true, the period of extended insurance would have to begin immediately following the default in the payment of the premium and not at the expiration of the grace period following that default and within which the overdue premium might be paid and the policy continued without a forfeiture and without lapsing. In that opinion we expressly overruled the comparatively recent prior case of Morgan v. Inter-Southern Life Insurance Co., 221 Ky. 582, 299 S. W. 186. The cases cited by plaintiff's counsel in support of the construction for

which they contend nearest in point are Fidelity Mutual Life Insurance Co. v. Gardner's Adm'r, 233 Ky. 88, 25 S. W. (2d) 69, and Prudential Insurance Co. of America v. Devoe, 98 Md. 584, 56 A. 809. Their other cited cases are not so much in point, and of the two stated ones the Devoe opinion is the only one directly in point. The real question in the Gardner Case was, Whether the happening of the contingency during the grace period, and when defaulted premium had not been paid, would preserve the rights of the insured under a disability clause providing for a waiver of premiums after the beginning or commencement of the disability? That question was decided in the affirmative in that case and was the only question involved therein. The case was not referred to in the Omer opinion, for the reason, perhaps, it was thought by the writer of the latter opinion, that the holding of the Gardner opinion did not bear upon the issues involved. At any rate the Omer opinion is the latest expressed view of this court on the defense now under consideration (2), and we now approve what was therein said.

That conclusion is not only supported by the adjudications upholding it to which we have referred, but it also appears to be the logical one to be drawn from the facts of the case. It will be observed that the provisions of the policy refer to defaults in payment of premiums and it is universally held by all courts and indorsed by all text-writers that the payment of premiums is absolutely essential to the continuance of insurance. The company issuing the policy may provide therein for grace periods within which payments may be made, without a forfeiture following default in payment of premiums, or it may, in the absence of such policy provision, subsequently agree to such grace periods, as was true in the Omer Case; but when contained in the policy by a "days of grace" clause the period of extended insurance and the grace period within which the premium may be paid and thereby save the forfeiture of the policy run concurrently. Such conclusion would seem to necessarily follow from the very meaning of the terms employed.

In endeavoring to reach the correct conclusion, it should be remembered that there is a distinction between the word "default" as applied to payment of premiums and the word "lapse" as applied to insur-

ance policies and the extinguishment of their obligations. Mr. Bouvier in the Third Revision of his Law Dictionary defines default as, "The non-performance of a duty, whether arising under a contract or otherwise. In its largest and most general sense, it seems to mean failing"; while Mr. Black in the Second Edition of his Law Dictionary defines the word as, "The omission or failure to fulfill a duty, observe a promise, discharge an obligation, or perform an agreement [authorities cited]. In practice—omission; neglect or failure." Mr. Black in his same work adopts and approves the same definition of lapse as is given by Mr. Webster, and which is "to fall or fail." In illustrating the meaning of the word as employed in the law, Mr. Webster adds: "thus, a legacy is said to lapse which fails to vest; an insurance policy lapses when it terminates, with forfeiture of value under it, solely from non-payment of a premium when due."

In the very nature of things a grace period in an insurance policy can have no beginning until there has been a failure to pay the premium when due according to the policy stipulations. The one necessarily follows the other, and the failure to pay the premium constitutes a default in payment. When that occurs, then the grace period begins, and failure to pay the premium during that period results in nothing more than a failure to take advantage of the privilege to continue the policy and to prevent a forfeiture by paying the premium within that extended or grace period. To uphold the contention of plaintiff's counsel with reference to this defense (2) would result in what the answer avers, and which the demurrer admits, in a disconcerting of the calculated actuarial values of life insurance contracts, as based and calculated upon the payment of premiums. No averment was necessary in order to present to the court such result, for, as was held in the Gardner opinion, the happening of the contingency insured against during the grace period would render the insurer liable without the premium for that period ever being paid, unless specific provision was made therefor in the policy.

Furthermore, it will be noted that the automatic commuted benefits provided for in the instant policy arises immediately following the default in the payment of the premium at its stipulated due date. The option

given to the insured to convert that commuted benefit into one for extended insurance, if exercised according to the terms of the policy, has the effect of substituting the fruits of that option for and in lieu of the automatic commuted benefit, and it would be illogical to hold that the substituted benefit acquired by the exercise of the option should begin at a different time than the beginning of the commuted benefit that it substituted, the latter of which is displaced by the proper exercise of the option. The displacing benefit would naturally commence at the same time of the commencement of the one so displaced. In other words, the displacing benefit, brought about through the exercise of the option, should become effective as of the same date as the one displaced. The option benefit occupies the vacuum created by the displaced commuted benefit, and which should relate back to the time of default in the payment of the premium.

We conclude that both reason and authority sustain defendant's contention with reference to this defense, and that the correct interpretation, in the absence of some relevant fact indicating to the contrary, is that a default in the payment of premiums occurs when it is not made on the due date indicated in the contract, and that an agreed grace period for its payment begins immediately upon such default and runs concurrently with a stipulated period for extended insurance after default.

It, therefore, follows that the court erred in sustaining the demurrer to the defendant's answer and amended answers, and for which reason the judgment is reversed with directions to set it aside and to overrule the demurrer, and for proceedings consistent with this opinion. The whole court sitting.