JENNIE BURSTEIN, APPELLEE, V. STATE MUTUAL LIFE
ASSURANCE COMPANY, APPELLANT.
1 N. W. (2d) 115

FILED NOVEMBER 28, 1941.   No. 31144.

*Finlayson, Burke & McKie,* for appellant.

*Monsky, Grodinsky, Marer & Cohen, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE and MESS-MORE, JJ., and CHAPPELL and ELLIS, District Judges.

MESSMORE, J.

Plaintiff, beneficiary under an insurance policy, issued by defendant company on the life of her husband, brought this action to recover the face value of the policy, less the amount of a policy loan.

December 13, 1917, the defendant issued to Harry Burstein a policy in the face amount of $2,000, with an annual premium of $62.96, payable quarterly. All premiums were paid with the exception of one due June 13, 1936, which was not paid within the grace period of 31 days. The insured was privileged to and did borrow from the defendant company on the security of the cash value of the policy. On June 13, 1936, the cash value of the policy amounted to $960.82. The amount of the loan, with interest to that date, was $948.50. The defendant proceeded to make settlement on the policy by charging the amount of the policy loan, including accrued interest on the loan during the 31-day grace period, or to July 14, 1936, in the amount of $953.30, leaving a balance of $7.52 for the purchase of extended insurance. The settlement option, which the insured designated in his application for insurance, was automatic extended insurance. The amount of $7.52 would purchase extended insurance for 230 days from June 13, 1936, or until January 29, 1937. The insured died May 9, 1937. Interest on the policy loan from June 13, 1936, to July 14, 1936, amounted to $4.80. In the event this sum of $4.80 was not charged as interest, it would have remained a part of the cash value of the policy available for the purchase of extended insurance and would have extended the insurance from July 13, 1936, to July 15, 1937,—beyond the date of the insured's death.

The issue is: If the computation of interest made by de-

fendant company is legal and correct under the terms of the policy, then the policy lapsed prior to the death of the insured; otherwise, the amount of such interest, used for the purchase of extended insurance under the terms of the policy, would continue the policy in force as extended insurance beyond the date of the insured's death, and the amount of extended insurance would be $1,051.50.

The trial court entered judgment for the plaintiff in the amount of $1,262.75 and allowed the sum of $200 as plaintiff's attorney fees. The defendant appeals. To determine this issue requires an examination of the policy, the loan agreement, and the statutes.

"An insurance policy must be considered as containing provisions required by statute to be included in it." *Kelly v. Prudential Ins. Co.,* 130 Neb. 873, 266 N. W. 757.

Section 44-602, Comp. St. 1929, provides in part: "No policy of life or endowment insurance, except policies of industrial insurance or where the premiums are payable monthly or oftener, shall be issued or delivered in this state unless it contains in substance the following provisions: * * * 2. A provision that the insured is entitled to a grace of one month within which the payment of any premium after the first year may be made, subject, at the option of the company to an interest charge not in excess of six per cent. (6%) *per annum* for the number of days of grace elapsing before the payment of the premium, during which period of grace the policy shall continue in force."

The policy provides with reference to the grace period: "After the payment of the first regular premium, annual, semiannual or quarterly, a grace of thirty-one days, *without interest,* will be allowed in the payment of all future premiums. During the period of grace this policy shall remain in full force." (Italics ours.)

The loan agreement provides: "If any premium on said policy remains unpaid at the end of the grace period, said Company is hereby authorized to deduct from the cash surrender value of said policy *at the date of default* the total indebtedness represented by this and any other cer-

tificate or certificates of indebtedness then outstanding against said policy, *including interest to the date of said default,* and to apply the balance as a net single premium to the purchase of paid-up insurance payable at the same time and on the same conditions as in the original contract, or, if such has been provided by the policy extended term insurance in the amount of the face of the policy including additions (if any) but less the total indebtedness." (Italics ours.)

It will be noted in the first line of one paragraph contained in the loan agreement "grace period" is used; in the second line of the paragraph "date of default" is used. It is clear that two different dates are contemplated. Under the wording of the contract, interest can be collected only to the premium due date, since, by express terms, interest can be collected only to the date of default, which can refer only to the date when the premium was due. While it might appear that some ambiguity exists as to the word "default," yet, properly and fairly interpreted, this is not true. The defendant contends that the words, "at the date of default," and "including interest to the date of said default," appearing in the same paragraph of the loan agreement, mentioned above, refer to the end of the grace period and not to the premium due date, and further contends that, in consideration of the provisions of the policy, the loan agreement, and statutes, as herein set out, the defendant was prohibited from making settlement on the policy until the grace period expired. The following provisions of the policy and statutes are of assistance in determining this question:

"Policy Loan. After two full annual premiums have been paid on this policy, and provided it is not continued as Extended Insurance, the holder hereof, upon its proper assignment and delivery to the Company, shall be entitled to a loan from the Company on the sole security of this policy, with interest at the rate of six *per centum* per annum, of a sum not exceeding its loan value, as shown by the accompanying table, *less interest on the amount so*

*loaned to the next anniversary of this policy,* and less any indebtedness to the Company under this policy and any unpaid portion of the premium for the then current policy year. Failure to repay any such loan or to pay interest thereon shall not avoid this policy while the total indebtedness hereon is less than such loan value at the time such default in payment occurs nor until thirty-one days after notice has been mailed by the Company to the last known address of the insured and assignee, if any." (Italics ours.)

Section 44-602, Comp. St. 1929, contains further provisions required to be included in the policy, as follows: "8. A provision that after three full years' premiums have been paid, the company at any time, while the policy is in force will advance, on proper assignment or pledge of the policy and on the sole security thereof" an amount as a loan that may be equal to or not exceed the cash surrender value of the policy and specifying the rate of interest which may be collected "in advance on the loan to the end of the current policy year. * * * 9. *A provision which, in event of default in premium payments after premiums shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy* and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than two and one-half *per centum* of the amount insured by the policy, and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. * * * " (Italics ours.)

The policy in the instant case provides: "In case of failure to pay any premium when due, or within the grace period, this policy shall thereupon lapse and become void, and all premium payments previously made shall be forfeited to the Company, and its only liability hereunder shall be such, if any, as is stated in this policy."

An analysis of the foregoing provisions of the policy

and of the statutes, which the policy endeavors to follow, clearly indicates that the date of the default is the date when the premium is due, and interest on a policy loan may be collected only to the end of the current policy year, which means the date when the premium is due. In addition, we refer to the nonforfeiture options of the policy: Option "(c) have the insurance extended in force as Extended Insurance from the anniversary last past for its face amount, including any outstanding dividend additions and less any indebtedness to the Company hereon or secured hereby, but without the right to loans."

"Automatic Extended Insurance. Upon the written request of the insured, Extended Insurance, as described above under Option (c), may be made the automatic option in case of default in the payment of any premium by an indorsement on this policy, made at the Home Office of the Company, provided such request is filed at the said Home Office when there is no premium due hereon and unpaid."

The insured accepted the option of extended insurance in his application as follows: "E. In case of failure to pay the premuim when due, do you desire the Extended Insurance or Paid-up provision of the proposed policy to become automatic? Extended."

"Term of Extended Insurance and Amount of Paid-up Insurance. The term for which this policy will be continued as Extended Insurance or the amount of Paid-up Insurance, as given in the accompanying table, is such as the Cash Value will purchase as a net single premium at the attained age of the insured, according to the American Experience Table of Mortality, with interest at three *per centum* per annum."

The question is whether, where the insured is entitled to a period of extended insurance under his policy, such period commences at the due date of the premium or at the date of expiration of the grace period for the payment of the premium. No general rule can be formulated governing the solution of the problem indicated, inasmuch as the policy provisions control in each instance, and are affected

in some cases by applicable statutory provisions.

"In some cases, computation of the period of extension commencing from the date of default in the payment of premium has been held correct, and especially are the courts led to such a result where the period of extended insurance is expressed to run from the 'date of default.'" 29 Am. Jur. 388, sec. 470.

"The period of extended insurance 'from date of default' in the payment of a premium, to which an insured is entitled under a life insurance policy, runs from the date when the premium fell due and not from the expiration of the grace period during which the insurance was to continue in force and after which, in case of nonpayment it was immediately to cease and become void." *Life & Casualty Ins. Co. v. Wheeler*, 106 A. L. R. 1270 (265 Ky. 269, 96 S. W. (2d) 753). See annotation, 106 A. L. R. 1276. The language of the policy in the instant case is similar to the language in the policies analyzed in the cases appearing in the annotation, 106 A. L. R. 1276. Authorities holding to the rule announced in *Life & Casualty Ins. Co. v. Wheeler, supra,* are numerous and constitute the weight of authority, and further citation is deemed unnecessary.

We conclude, in view of the authorities reviewed, the provisions of the policy, and statutes, that the automatic extended insurance, as appearing in the policy, starts from and becomes effective on the premium due date of the policy,—in the instant case June 13, 1936.

Defendant argues that the insured, during the grace period, receives no free insurance, in the event of death; that during such period a premium would be charged from the due date thereof to the date of death occurring within the grace period; therefore, to adopt plaintiff's contention, —that the date to which interest may be charged and the date from which extended insurance begins to run must coincide,—means that an insurance company is compelled either to waive interest on an unpaid indebtedness for the 31 days of grace, or to grant 31 days of free insurance. A comprehensive interpretation of the term "grace period,"

found in the following authority, disposes of defendant's argument as to free insurance:

In *Davis v. Metropolitan Ins. Co.*, 161 Tenn. 655, 32 S. W. (2d) 1034, in construing the grace period provision, the court said: "It must be borne in mind that this grace provision does not contemplate *free* insurance. The grace is allowed in order that the insured may have this extension of opportunity within which to pay another premium and thus avoid forfeiture for nonpayment on the date fixed for payment."

Few cases have been decided by the courts involving the right of an insurance company to charge interest on a policy loan during the grace period. The principal cases to which we are referred follow:

In *Mayers v. Massachusetts Mutual Life Ins. Co.*, 11 Fed. Supp. 80, the question of the right to charge interest during the grace period was not raised. However, there is language in the opinion to support the defendant's contention, in substance, as follows: On September 19, 1932, the premium due date, the indebtedness on the policy amounted to $1,999.44, the cash surrender value was $2,009, leaving a balance of $9.56. This amount would have purchased extended term insurance on the policy for only a few days. On the 31st day after September 19, 1932, to wit, October 20, 1932, the last day of grace, the cash surrender value was $2,009, and the indebtedness on the policy was $2,009, which would indicate that interest was charged on the loan during the grace period.

In *Smith v. John Hancock Mutual Life Ins. Co.*, 195 Ark. 699, 114 S. W. (2d) 15, cited by defendant, the following language in the opinion apparently supports defendant's contention: "When thirty-one days expired, the indebtedness was increased from $820.61 to $825.53, the difference of $4.92 being interest on the loan which accrued during the period of grace. The result was that instead of having a credit of 39 cents when the forfeiture occurred, an indebtedness of $4.53 had resulted."

While plaintiff and defendant both cite the case of

*De Long v. Jefferson Standard Life Ins. Co.*, 109 Fed. (2d) 585, the facts in the case are somewhat analogous to those in the instant case and support the plaintiff's contention herein. The court was interpreting the law of Florida in construing a life policy, which was a Florida contract. The policy was issued January 23, 1924. The insured paid all premiums due thereunder until January 23, 1935, but failed to pay the premium on that date and did not pay interest on outstanding loans against the policy. He died February 25, 1935,—33 days after the due date of the unpaid premium. On January 23, 1935, the cash value of the policy was $6,000. The indebtedness (principal and interest) outstanding against it on that date totaled $5,936.40, leaving a net cash value of $63.60, which was sufficient to keep the policy in force beyond the date of death, if applied to the purchase of extended insurance, unless interest on the loans continued to accrue from January 23, 1935, until the insured's death. The purchase of extended insurance with the $63.60 revived the policy for 44 days after January 23, 1935, and the insured died 33 days after said date. Thus, the policy was in full force and effect at the time insured died, and the court so held, and the insurance company was not permitted to charge interest on the policy loan during the grace period. The policy in the foregoing case provided that on default in payment of any premium the policy shall cease and terminate and the payments received thereon shall become the property of the company, except as specified. In this respect the policy is analogous to the policy in the instant case. The term, "except as specified," relates to the nonforfeiture provisions. The court, speaking with reference to the due dates of premiums and analyzing the provisions of the policy, said: "From these provisions, it is manifest that the policy became forfeited on the date the unpaid premium was due, except for rights reserved thereunder by the grace period and the nonforfeiture provisions. Upon the expiration of the grace period, the election rights under the nonforfeiture provisions alone remained, and these rights were necessarily

determined by the status of the policy on the date of the unpaid premium. It was conceded in argument that, if there had been no loan on the policy, the settlement would have been reckoned as of the due date of the unpaid premium. * * * The existence of a loan does not furnish the basis for a different date. The indebtedness against the policy is deemed to have been liquidated on that date by a charge against the cash value, and the balance represents the net cash value." Several cases are cited supporting this proposition, viz., *Hawthorne v. Bankers' Life Co.,* 63 Fed. (2d) 971; *Equitable Life Assurance Society v. MacKirgan,* 86 Fed. (2d) 271; *Ratliff v. Kentucky Home Mutual Life Ins. Co.,* 87 Fed. (2d) 965; *Pacific Mutual Life Ins. Co. v. Goss,* 99 Fed. (2d) 658.

The provisions of the policy, the loan agreement, the statutes and the authorities warrant the conclusion that the defendant was without power or authority to charge interest on the policy loan from June 13, 1936, to July 14, 1936.

The judgment of the district court is affirmed. The plaintiff's attorneys are allowed a fee in the amount of $150 for services rendered in this court.

AFFIRMED.