### CHILIMIDOS v. METROPOLITAN LIFE INS. CO.

Civ. A. No. 8618.

United States District Court
D. Massachusetts.
Aug. 11, 1950.

Ernest J. Greenhood, Boston, Mass., for plaintiff.

Edward J. Duggan and Lyne, Woodworth & Evarts, Boston, Mass., for defendant.

McCARTHY, District Judge.

This is an action upon an insurance policy under which the life of James Chilimidos was insured in the sum of $5,000 payable to his wife, the plaintiff. The following facts are found, based upon an agreed statement by the parties.

1. The plaintiff is a citizen and resident of Massachusetts and the defendant, Metropolitan Life Insurance Company (hereinafter called the Company), is a corporation incorporated under the laws of the State of New York.

2. The matter in controversy exceeds $3,000 exclusive of interest and costs.

3. The Company issued Policy No. 0861449 SC (Exhibit A) in the amount of $5,000 on the life of James Chilimidos (hereinafter called the insured) on November 14, 1944. The policy was delivered at Boston, Mass. The beneficiary named in this policy was the plaintiff, who was the wife of the insured from the date of issue of the policy until the death of the insured; the beneficiary was never changed.

4. All premiums due under the terms of the policy were duly paid from the issue date to and including the premium which was due on November 14, 1947; the premium due on February 14, 1948 was not paid when due nor within the grace period nor at any time thereafter.

5. The policy provided, inter alia: "A grace period of 31 days without interest charge shall be granted for the payment of every premium after the first, during which grace period this policy shall continue in full force, but if the insured dies during such period the portion of any unpaid premium applicable to the current policy month

shall be deducted from the amount otherwise payable under this policy". Other provisions of the policy pertinent to this case appear in the margin.[1]

6. On February 26, 1948, the insured applied to the Company for a loan in the sum of $325 at the Company's Roxbury district office and on the same day the Company authorized said district office to make the loan. Thereupon the insured executed a "Loan Certificate" (Exhibit B), assigned and delivered the policy to the Company. The notation on Exhibit B, "Loan indebtedness retired in continuing policy under paid up term insurance option May 13, 1948" did not appear on the "Loan Certificate" when it was executed by the insured.

7. The loan applied for in the sum of $325 was paid to the insured on February 27, 1948.

8. The plaintiff never consented to the making of the loan by the Company to the insured, nor did she ratify the same.

9. On or about March 4, 1948, the Company returned the policy to the insured at Boston, Mass.; at that time the policy bore the stamped endorsement over the date of March 2, 1948: "This policy has been assigned to the Metropolitan Life Insurance Company as the sole security for a loan, the unpaid amount of which and of the interest thereon is a lien against the policy. Possession of the policy, as evidence of such security, has been waived by the Company."

10. There were no paid up dividend additions or dividend accumulations outstanding to the credit of this policy on or after February 14, 1948, and the insured never elected to take any of the options provided for in Paragraph 11, Section II, Page 4, of the policy.

1. "All premiums are payable, on or before their due dates * * *." (Provisions, par. 4, p. 3.)

"The payment of a premium shall not maintain this policy in force beyond the due date when the next premium is payable, except as otherwise provided herein." (Provisions, par. 4, p. 3.)

"In the event of default in the payment of any premium after premiums shall have been paid for at least two years, this Policy shall, unless and until either Option (a) or Option (b) below is elected, be automatically continued, commencing as of the due date of the premium in default, as Nonparticipating Paid-up Term Insurance. The amount of such insurance shall be equal to the Amount of Insurance shown on page 1 * * * less the amount of any indebtedness, including interest then accrued, for which this policy is security to the Company. The term of such insurance shall be such as the Cash Surrender Value, as defined below, will purchase when applied as a net single premium at the then attained age of the Insured." (Provisions, par. 11, section II, p. 4.)

"Loans—After a Cash Surrender Value is available as provided in Provision 11, the Company * * * will loan to the person or persons entitled thereto (see Provision 1) on the sole security of this Policy, an amount not greater than the Cash Surrender Value at the end of the current policy year for a Policy without indebtedness, but a loan will

not be granted if this Policy is being continued as Nonparticipating Paid-up Term Insurance * * *. The whole or any part (not less than $5) of any indebtedness may be repaid at any time while this Policy is in force prior to the death of the Insured, except that any indebtedness incurred prior to the date of default in payment of any premium may not be repaid after the expiry of the grace period for the payment of such premium unless the Policy is reinstated. At the death of the Insured, any then outstanding indebtedness, including interest then accrued, shall be deducted from the amount otherwise payable under this Policy." (Provisions, par. 12, p. 4.)

"Reinstatement— * * * Any loan which existed at the due date of the premium in default, together with interest at the same rate to the date of reinstatement, may be either repaid in cash, or, if not in excess of the Cash Surrender Value at the date of reinstatement for a policy without indebtedness, continued as an indebtedness to the Company for which this policy shall be security." (Provisions, par. 14, p. 4.)

"Cash Surrender Value— * * * shall be equal to the cash value according to the Table of Values on page 5 * * * less any indebtedness, including interest then accrued, for which this Policy is security to the Company." (Provisions, par. 11, section II(a), p. 4.)

11. The insured never repaid the amount of the loan, $325, in money.

12. On May 21, 1948, the Company mailed a notice to the insured to the effect that the policy was continued as Nonparticipating Paid-up Term Insurance (Exhibit C). This notice indicated that the expiry date of the term insurance was "6 17 48".

13. The notices referred to in the third paragraph of the loan provision of the policy, Exhibit A, and in the "Loan Certificate", Exhibit B, were never sent to the insured.[2]

14. In accordance with the pertinent provisions of the policy, Exhibit A, the policy was automatically continued as Nonparticipating Paid-up Term Insurance commencing as of February 14, 1948, the due date of the premium in default.

15. Between February 14, 1948, and February 26, 1948, the Cash Surrender Value of the policy was $380 which sum, if it had been applied as a net single premium would have purchased Nonparticipating Paid-up Term Insurance in the sum of $5,-000 at the insured's then attained age of fifty-five years and three months, for a term commencing February 14, 1948, and expiring subsequent to February 27, 1949.

16. The Company retired the outstanding loan of $325 by deducting the amount thereof from the cash surrender value of the policy; the balance of the cash surrender value of $55 was applied by the respondent as a net single premium to purchase Nonparticipating Paid-up Term Insurance in the amount of $4,675 at the then attained age of the insured previously noted. Such term insurance commenced February 14, 1948, and expired June 17, 1948. The foregoing computations were made on May 7, 1948, by the Company as of February 14, 1948.

17. On February 27, 1949, the insured died at Boston. On March 17, 1949, it appears that proof of his death was given and the policy delivered to the Company. The latter subsequently redelivered the policy to the plaintiff and has refused to pay the plaintiff any sum under the policy.

18. The Company was qualified to do business in the Commonwealth of Massachusetts under the applicable provisions of General Laws (Ter.Ed.) Chapter 175 at the time the policy in suit was issued. The form of the policy had been approved by the Massachusetts Commissioner of Insurance. The Company never filed with the Commissioner of Insurance any written notice of its election to comply with the provisions of the Acts and Resolves of the Commonwealth of Massachusetts of 1943, Chapter 227.

The nub of the dispute in this action is whether the loan made by the Company to the insured on February 26, 1948, was an indebtedness secured by the policy which could and should have been deducted from the cash surrender value of the policy in determining the "net single premium" available for the purchase of Nonparticipating Paid-up Term Insurance. It was deducted with the result that the term insurance expired prior to the date of the insured's death. If it had not been deducted the insured would have been covered by the policy. The plaintiff claims that it should not have been deducted. The disagreement arises as to whether the loan should have been involved at all in determining the terminal date of the Term Insurance.

The first point upon which the parties disagree is the date when the premium in default became in fact in default. The plaintiff asserts that this critical date was immediately after the due date, February 14, 1948; the defendant, on the other hand, contends that the premium was not in default until the grace period allowed by the policy had expired. The latter contention must be rejected. While apparently there is no Massachusetts case in point, the question has arisen in other jurisdictions and the answer has been quite generally given that the date of default is the date when the premium falls due, temporary insurance running from that date

---

2. The parties agree that all notations, memoranda and endorsements appearing on Exhibits A, B and C were placed thereon by the respondent in the usual course of its business but, the plaintiff does not agree that such notations, memoranda and endorsements were properly placed on such exhibits.

rather than from the date of expiration of the grace period. Bankers' Life Co. v. Burns, 5 Cir., 30 F.2d 327; Joyner v. Jefferson Standard Life Insurance Co., 5 Cir., 53 F.2d 745; Lipman v. Equitable Life Assurance Society, 4 Cir., 58 F.2d 15; Ratliff v. Kentucky Home Mut. Life Ins. Co., 5 Cir., 87 F.2d 965; Meadows v. Continental Assurance Co., 5 Cir., 89 F.2d 256; Shira v. New York Life Ins. Co., 10 Cir., 90 F.2d 953; De Long v. Jefferson Standard Life Ins. Co., 5 Cir., 109 F.2d 585; Business Men's Assurance Co. of America v. Davies, 106 Colo. 51, 101 P.2d 432; Coons v. Home Life Ins. Co. of N. Y., 368 Ill. 231, 13 N.E.2d 482; Life & Casualty Ins. Co. of Tennessee v. Wheeler, 265 Ky. 269, 96 S.W. 2d 753, 106 A.L.R. 1270; Grattan v. Prudential Ins. Co., 98 Minn. 491, 108 N.W. 821; Hutchinson v. National Life Ins. Co., 196 Mo.App. 510, 195 S.W. 66; Burstein v. State Mutual Life Assurance Co., 140 Neb. 624, 1 N.W.2d 115; Wilkie v. New York Mut. Life Ins. Co., 146 N.C. 513, 60 S.E. 427; Couch, Cyclopedia of Insurance Law, Vol. 1, 1945 Cumulative Supp., S 648-1, p. 808.

■ At the time of default there was no indebtedness on the policy. Therefore, at the time of default, applying the pertinent language of paragraph 11 of the policy, the policy was automatically continued, commencing as of February 14, 1948, as Nonparticipating Paid-up Term Insurance in the amount of $5,000. The policy is plain and unambiguous as to this. No matter when the mathematical computations may have been made, as of February 14, 1948, the policy was continued as term insurance, the amount of such insurance being the face amount shown on page 1, "less the amount of any indebtedness, including interest *then accrued*". (Emphasis added.) The "then accrued" must refer back, according to ordinary principles of construction, to the phrase "the due date of the premium in default", which has been shown to be February 14, 1948. Thus, when the term insurance automatically commenced according to the terms of the policy, it was in the amount of $5,000 and its term ran from February 14,

1948 to a date subsequent to February 27, 1949, based on the cash surrender value of $380. Therefore, when the insured on February 26, 1948, applied to the company for a $325 loan he was protected, according to the terms of the policy, by Nonparticipating Paid-up Term Insurance in the amount of $5,000, which insurance extended beyond February 27, 1949. It is true that such term insurance might have terminated (in the sense that it would have no further effect) if he had paid the overdue premium during the grace period or if he had chosen either Option (a) or Option (b). But these were conditions subsequent; the failure to pay the premium or choose an option left the term insurance still effective.

■ It becomes necessary then to determine whether the Company, having made a loan to the insured under these circumstances, could deduct the amount of the loan from the cash surrender value and thereby shorten the term of the Nonparticipating Paid-up Term Insurance. The answer to this must be in the negative. If the loan had been made before the due date of the premium in default, there would be no difficulty. In that case, in determining the period of duration of the term insurance, the amount of the loan with interest then accrued could properly be deducted from the cash surrender value, all in accordance with the provisions of the policy. Reynolds v. Northwestern Mutual Life Ins. Co., 298 Mass. 208, 10 N.E.2d 70, 113 A.L.R. 603.

But in the case at bar the loan was made after the term insurance had begun to run. In order to effect the duration of such insurance by the deduction of such a loan or advance from the cash surrender value, the Company should clearly provide for the same in its policy. One looks in vain for such a provision or formula in this policy. Again the Massachusetts Supreme Judicial Court has not passed on such a set of facts, i. e. a loan made while the policy was continued as term insurance. The Reynolds case, supra, was concerned with a policy loan made before the due date of the premium in default and decided that interest accrued to the date of default.

could be deducted in addition to the amount of the loan from the cash surrender value even though the interest on the loan was "payable annually". The situation has occurred elsewhere, however, and the logic of other decisions persuades me that the deduction in the instant case was improper. See Francis v. Prudential Ins. Co., 243 Pa. 380, 90 A. 205; Grand Lodge A.O.U.W. of Oklahoma v. Hopkins, 175 Okl. 170, 52 P.2d 4; Burstein v. State Mutual Life Assurance Co., 140 Neb. 624, 1 N.W.2d 115; Equitable Life Ins. Co. of Iowa v. Taylor, 106 Ind.App. 508, 17 N.E.2d 851. At the risk of unduly extending this Memorandum, it would not seem out of place to quote a portion of the opinion in the Francis case, supra: "If appellant intended to reduce the term of extended insurance on account of loans to the insured, it would have been an easy matter to have so provided in the policy, and the inference from its failure to do so is that it did not so intend. The policy is in the language of the insurance company, and the presumption is that its express provisions contain all the conditions intended to be imposed. Certainly the insured had the right to assume that the policy meant what it said, and that conditions not expressed did not exist. As to the loans appellant safeguarded its interests by provisions for forfeiture, and for the deduction of indebtedness * * *. There is no provision in the policy for the reduction of the term of extended insurance on account of indebtedness to the insurer, and, in the absence of such a provision, courts are not at liberty to read into the contract what it does not contain. Again, the rule that insurance contracts shall be taken most strongly against the insurer applies, and, when the provisions as to loans are read in the light of this rule, the argument of appellant on this branch of the case fails." [243 Pa. 380, 90 A. 208.]

■ As in the Francis case, there is no clause in the policy under consideration which permits the deduction of a loan made after the due date of the premium in default; there is no formula set out for shortening the term of term insurance. The reason why no such clause exists is apparent: the Company did not see the necessity for inserting such a clause because it intended that loans would not be made while the policy was being continued as term insurance. " * * * but a loan will not be granted if this Policy is being continued as nonparticipating Paid-up Term Insurance". (Provisions, par. 12, p. 4.) It is doubtless true, as defendant contends, that the Company could waive this provision. It appears to have done just that. But such a waiver does not call into being language which is not present in the policy. The plaintiff is, of course, estopped to deny the making of the loan or that the insured was indebted to the Company in the amount of $325. But there is no equitable ground for estopping the plaintiff from showing that there is no provision in the policy allowing the company to deduct the loan from the cash surrender value in order to reduce term insurance which had already "vested".

■ Nor do I find anything in the exhibits which helps the defendant. "A party to the action cannot make evidence for himself by writing a letter to the other party which the latter is not bound to answer." Lord & Spencer, Inc., v. M. N. Stout Co., Inc., 1 Cir., 33 F.2d 60, 62.

■ I conclude, therefore, that at the time of the insured's death on February 27, 1949, Policy No. 0861449SC was in force as Nonparticipating Paid-up Term Insurance; that the deduction by the Company of $325 from the cash surrender value was not authorized by the provisions of the policy and was improper; that the plaintiff as beneficiary is entitled to judgment in her favor against the defendant in the sum of $4,675 ($5,000 less $325, the amount of the loan), plus interest from March 17, 1949.

In view of these conclusions it becomes unnecessary to decide whether the plaintiff's further contention that her assent, as beneficiary, to the making of the loan was required under Mass. G.L. (Ter.Ed.) c. 175, § 126, is tenable.

Judgment for plaintiff may be entered in accordance with this memorandum.