[Civ. No. 15566. Fourth Dist., Div. Two. July 13, 1976.]

MALCOLM B. FURTADO, Plaintiff and Appellant, v.
METROPOLITAN LIFE INSURANCE COMPANY, INC.,
Defendant and Respondent.

**COUNSEL**

John K. Trotter, Jr., and Martin C. Handweiler for Plaintiff and Appellant.

Adams, Duque & Hazeltine, James S. Cline and Noel K. Torgerson for Defendant and Respondent.

**OPINION**

**KAUFMAN, J.**—Malcolm B. Furtado ("plaintiff") brought this action seeking a declaration of liability against Metropolitan Life Insurance Company, Inc. ("Metropolitan") based upon a policy of life insurance on the life of plaintiff's son, under which plaintiff was the named beneficiary. Following a trial by the court, judgment was rendered in favor of Metropolitan. Plaintiff appeals from the judgment.

*Facts*

On February 12, 1973, Metropolitan issued a policy of life insurance with a face value of $15,000 to and on the life of plaintiff's son Vincent E. Furtado, then 18 years of age. Plaintiff was designated as beneficiary.

Premium payments of $26.45 each were to be paid on or before the 12th day of each month commencing February 12, 1973. A total of six monthly premiums were paid, the last payment being that of July 12, 1973. The payment due August 12, 1973, was not paid.

Plaintiff's son died on October 26, 1973, 75 days after August 12, 1973, the due date of the August premium. Plaintiff claimed that the insurance policy was still in effect on the date of death. Metropolitan claimed that the policy had lapsed for nonpayment of premiums.

The controversy revolves around three policy provisions. On page 6 of the policy under the large-lettered heading "PREMIUM PAYMENT AND REINSTATEMENT" and a bold-face subheading entitled "Payment of Premiums and Grace Period" the policy provides: "A grace period of 31 days will be granted for the payment of each premium after the first, during which period the policy will continue in force. If the Insured dies during such period, any unpaid premium will be deducted from the amount otherwise payable under this policy." For purposes of identification we designate this provision "provision one."

On page 7 of the policy under a large-lettered heading entitled "INSURANCE OPTIONS ON NONPAYMENT OF PREMIUMS" the policy provides: "The insurance options provided below are available if a premium is in default *beyond the grace period.* The option for Extended Term insurance will be automatically effective if premiums have been paid for at least a number of years for which a period of Extended Term insurance is first shown in the Table on page 8." (Italics added.) For purposes of identification we shall refer to this provision as "provision two."

Immediately following provision two, under the bold-face heading "Extended Term Insurance" the policy provides:

"Under this option, the policy will be continued as nonparticipating paid-up Extended Term insurance.

"For a policy without any paid-up additions, dividend accumulations, or indebtedness, the amount of such insurance will be the Face Amount of Insurance and *the term of the insurance, measured from the due date of the premium in default,* will be as specified in the Table on page 8." (Italics added.) For purposes of identification we shall refer to this provision as "provision three."

The table on page 8 of the policy clearly specifies that for a policy in force six months the period of extended term insurance is to be 60 days.

*Contentions*

In a somewhat overlapping presentation plaintiff contends:

(1) The grace period of 31 days and the 60-day period of extended term insurance should run consecutively and not concurrently;

(2) Policy provisions two and three are in conflict, and the provision affording the most protection should control;

(3) Provisions one, two and three are ambiguous and should be construed against the insurer and in favor of coverage;

(4) Provision three constitutes an exclusion from or limitation upon coverage and is not stated in language that is conspicuous, plain and clear.

*Discussion and Disposition*

*Scope of Review*

■  Where, as here, the interpretation of a written instrument depends solely on the language of the instrument without the aid of extrinsic evidence, ". . . an appellate court must independently arrive at its own interpretation and may not uphold a judgment based on an inconsistent interpretation of the trial court merely because the construction made by the trial court was reasonable." (*Rooney* v. *Vermont Investment Corp.,* 10 Cal.3d 351, 372 [110 Cal.Rptr. 353, 515 P.2d 297]; accord: *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 429-430 [296 P.2d 801, 57 A.L.R.2d 914].) With this standard of review in mind, we turn to consider plaintiff's contentions.

*Exclusion From or Limitation Upon Coverage*

Plaintiff is correct that exclusions or limitations upon coverage must be "conspicuous, plain and clear." (*Crane* v. *State Farm.Fire & Cas. Co.,* 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]; *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168].) ■  Plaintiff is incorrect in asserting, however, that policy provision three dealing with the duration of extended term insurance constitutes an exclusion from or limitation upon coverage. Plaintiff is

further mistaken in asserting that the language of provision three is not clear, plain and conspicuous.

Treating the last assertion first, the language of provision three plainly and clearly specifies that the term of the extended term insurance is "measured from the due date of the premium in default," August 12, 1973. The provision is not inconspicuous; it appears in quite readable print under the bold-face caption "Extended Term Insurance," which, in turn, appears under the large-lettered heading "INSURANCE OPTIONS ON NONPAYMENT OF PREMIUMS."

Provision three does not constitute an exclusion from or limitation upon coverage. On the contrary, provision three constitutes a nonforfeiture provision in compliance with, and indeed more liberal than, the requirements of the Standard Nonforfeiture Law (see Ins. Code, §§ 10159.1-10167).

Section 10160 of the Insurance Code mandates certain standard provisions for life insurance policies issued or delivered in California. In relevant part, that section provides:

"Except as provided in Section 10165, no policy of life insurance shall be issued or delivered in this State unless it shall contain in substance the following provisions, or corresponding provisions which are at least as favorable to the defaulting or surrendering policyholder;

"(a) Nonforfeiture benefit. That, in the event of default in any premium payment after premiums have been paid for at least one full year the insurer will grant, upon proper request not later than 60 days after *the due date of the premium in default,* a paid-up nonforfeiture benefit on a plan stipulated in the policy, *effective as of such due date,* of such value as may be hereinafter specified." (Italics added.)

Thus, that part of provision three which provides that the term of the extended term insurance is to be "measured from the due date of the premium in default" is fully authorized by Insurance Code section 10160.

*Consecutive or Concurrent Running of the Grace Period and the Term of Extended Term Insurance*

In urging that the 31-day grace period and the 60-day period of extended term insurance should run consecutively and not concurrently,

plaintiff correctly asserts that under policy provision two the extended term insurance option does not become operative or available unless and until "a premium is in default beyond the grace period." It does not follow, however, that the grace period and the period of extended term insurance should run consecutively and not concurrently. Policy provision three is the only provision dealing with the commencement of the term of extended term insurance, and it clearly and unmistakably specifies that, once the extended term insurance provision takes effect, the term of such insurance is to be "measured from the due date of the premium in default." Thus, the grace period and the period of extended term insurance run concurrently, not consecutively. Plaintiff's contention to the contrary is based upon the mistaken notion that policy provision one providing a grace period of 31 days affords a free month of insurance and that the concurrent running of the grace period and the period of extended term insurance would deprive him of the benefit of the prescribed grace period. To the contrary, the grace period does not afford a free period of insurance coverage. It simply allows for reinstatement of the policy by payment of the premium in default without a showing of insurability. (See *Schick* v. *Equitable Life Assur. Soc.,* 15 Cal.App.2d 28, 33 [59 P.2d 163]; 6 Couch, Insurance (2d ed.) § 32:133, pp. 348-349.)

Apparently the question whether the grace period and period of extended term insurance run concurrently or consecutively has not heretofore been decided in California. However, there is ample authority from other jurisdictions for the proposition that the grace period and the period of extended term insurance may both commence on the due date of the payment in default and, thus, run concurrently when the language of the policy clearly so provides. (*Shira* v. *New York Life Ins. Co.* (10th Cir.) 90 F.2d 953, 956; *Meadows* v. *Continental Assur. Co.* (5th Cir.) 89 F.2d 256, 259; *Chilimidos* v. *Metropolitan Life Ins. Co.* (D.Mass.) 93 F.Supp. 50, 53-54; *Coons* v. *Home Life Ins. Co. of New York,* 368 Ill. 231 [13 N.E.2d 482, 486]; *Life & Casualty Ins. Co. of Tennessee* v. *Wheeler,* 265 Ky. 269 [96 S.W.2d 753, 756-757, 106 A.L.R. 1270]; *Blumberg* v. *United Benefit Life Insurance Co.,* 219 Md. 61 [148 A.2d 573, 574-576]; *Grattan* v. *Prudential Ins. Co.,* 98 Minn. 491 [108 N.W. 821, 821-822]; *Myles* v. *National Life & Accident Insurance Co.,* 223 Miss. 181 [77 So.2d 815, 816-818]; *Burstein* v. *State Mut. Life Assur. Co.,* 140 Neb. 624 [1 N.W.2d 115, 118]; *Travelers Ins. Co., Hartford, Conn.* v. *Buchanan,* 186 Okla. 221 [91 P.2d 1062, 1064]; see generally, Annot., 106 A.L.R. 1276; 45 C.J.S., Insurance, § 638, at p. 534.) As previously noted, the commencement of the period of extended term insurance at the due date

of the payment in default is expressly authorized by section 10160 of the Insurance Code. (See p. 22, *ante.*)

In support of his argument that the grace period and the period of extended term insurance should be construed to run consecutively, plaintiff cites *Mitchell* v. *Southern Union Life Insurance Company* (Tex.Civ.App.) 218 S.W. 586 and *Prudential Insurance Company* v. *Devoe,* 98 Md. 584 [56 A. 809], in both of which it was held that periods of extended term insurance commenced at the end of the respective grace periods. In *Mitchell,* the policy failed to prescribe the date of commencement of the period of extended term insurance. The *Mitchell* court observed that the absence of any clear provision as to the inception point of the period of extended term insurance rendered the provisions uncertain and held ". . . the policy is at least ambiguous, and . . . it admits of [plaintiff's] construction, and, it being that most favorable to the insured, will be enforced." (218 S.W. at p. 590.) In *Devoe* the policy provided: " 'In the payment of any premium under this policy, except the first, a grace of one month will be allowed, during which time the policy will remain in force. If the policy, after being in force one full year, shall *lapse* for nonpayment of premium the company will continue in force the insurance under the policy for a period of sixty days *from the date of the lapse.*' " (56 A. at p. 809.) (Italics added.) The *Devoe* court, relying on the literal import of the quoted language, held that, inasmuch as the policy did not lapse until the end of the grace period, the extended term insurance would not commence until the end of the grace period. Both *Mitchell* and *Devoe* are thus distinguishable. In the case at bench policy provision three clearly and unequivocally provides that the period of extended term insurance is to be "measured from the due date of the premium in default."

*Conflicting Provisions*

We have little doubt that where insurance policy provisions are in conflict, the provision affording the most protection should control. However, we fail to perceive the conflict between policy provisions two and three asserted by plaintiff. As previously noted, plaintiff is correct in observing that policy provision one indicates that the extended term insurance option does not become available or take effect unless "a premium is in default beyond the grace period." However, again as we have noted above, provision three is the only provision dealing with the commencement of the period of extended term insurance and it clearly provides for commencement of the term on "the due date of the premium in default."

█ "In the construction of insurance policies, it is the settled rule that the whole of the contract is to be taken together, each clause helping to interpret the other." (*Jurd* v. *Pacific Indemnity Co.,* 57 Cal.2d 699, 704 [21 Cal.Rptr. 793, 371 P.2d 569]; see Civ. Code, § 1641; *Jarrett* v. *Allstate Ins. Co.,* 209 Cal.App.2d 804, 809 [26 Cal.Rptr. 231].) "Moreover, a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates." (*General Ins. Co.* v. *Truck Ins. Exch.* 242 Cal.App.2d 419, 426 [51 Cal.Rptr. 462]; see Civ. Code, § 3534; *Comunale* v. *Traders & General Ins. Co.,* 116 Cal.App.2d 198, 201 [253 P.2d 495].) █ Construing the two provisions together, any doubt as to the meaning of provision two stating that the extended term insurance option becomes effective if a premium is in default beyond the grace period is resolved by reference to provision three which specifically states that the term of insurance is to be measured from the due date of the premium in default. Such an interpretation gives effect to both provisions without doing violence to the intent and purpose of the contract insofar as it provides for extended insurance in the event of a default. (See Civ. Code, § 1652; *Kelly* v. *Great Western Acc. Ins. Co.,* 46 Cal.App. 747, 752 [189 P. 785].)

*Ambiguity*

Unquestionably ambiguities in an insurance policy are construed against the insurer and in favor of the insured. (*Universal Underwriters Ins. Co.* v. *Gewirtz,* 5 Cal.3d 246, 250 [95 Cal.Rptr. 617, 486 P.2d 145]; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 269.) However, for the same reasons we found no conflict between the applicable provisions under the heading "Conflicting Provisions," we find no ambiguity. Provision three makes it perfectly clear that the period of extended term insurance commences on "the due date of the premium in default." "[W]here the terms of the policy are plain and explicit, the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed [citations omitted]." (*New York Life Ins. Co.* v. *Hollender,* 38 Cal.2d 73, 81 [237 P.2d 510]; accord: *Jensen* v. *Traders & General Ins. Co.,* 52 Cal.2d 786, 790-791 [345 P.2d 1].)

Affirmed.

Tamura, Acting P. J., and Fogg, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.