## LORD & SPENCER, Inc., v. M. N. STOUT CO., Inc.*

Circuit Court of Appeals, First Circuit.
May 27, 1929.

No. 2334.

*Rehearing denied July 30, 1929.

George S. Ryan, of Boston, Mass. (Ammidon & Bicknell, of Boston, Mass., on the brief), for appellant.

Joseph Cavanagh, of Boston, Mass. (Wardner & Cavanagh, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and ANDERSON, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge. The appellee, plaintiff below (hereinafter referred to as the plaintiff), recovered judgment against the appellant, defendant below (hereinafter referred to as the defendant), in an action of contract brought to recover damages for breach of a contract to purchase and pay for five carloads of oranges, described in the contract as: " 'Yours Truly' brand Florida oranges average run of sizes, * * * bulge pack."

Defendant's assignments of error relate to admission and exclusion of evidence, to certain portions of the judge's charge, and to his refusal to give certain requested instructions. Some of these assignments were not argued and may be treated as waived. Those principally relied upon, and which we deem worthy of notice in an opinion, will be considered.

Assignments Nos. 5 and 10 may well be treated together because they relate to the admission in evidence of a letter and to comments during arguments upon facts disclosed in the letter.

It appeared in evidence that the five carloads of oranges were shipped by the plaintiff to the defendant, and upon their arrival in Boston the defendant, on November 30, 1925, notified the plaintiff by wire that the cars had been examined; that the fruit was of poor quality and "all slack pack"; that it would be impossible to accept the cars; and that it had notified the defendant's representative at Boston, who would communicate with the plaintiff. On the same day, plaintiff notified the defendant that it would refuse to accept the rejection of the five cars. On December 1, 1925, the defendant wired the plaintiff as follows:

"Answering wire oranges so poor positively cannot handle very sorry to have this happen true the market has smashed but regardless of market conditions could not accept these cars they look like wild oranges and in addition to that they are not bulge pack and very unattractive have got in touch with your representative here and inspection is being made."

On the same day one Valente, who, according to the evidence, was the representative referred to in the defendant's telegram above mentioned, wrote the following letter to the defendant:

"December 1, 1925.

"Lord & Spencer, Inc., 21 Northside Faneuil Hall Market, Boston, Mass.—Gentlemen: In accordance with your request to go to the Boston & Maine R. R. yard, with your man Tom Pierce to examine five cars of oranges that you bought from M. N. Stout Co., Inc., Plant City, Florida, through us acting as Brokers for M. N. Stout Co., Inc., Plant City, Florida, I examined car FGE-20018 and FGE32194. I fear you have been misinformed regarding the quality of these cars. In my opinion both of these cars are a fine run of fruit from the Plant City section. Mr. Pierce tells me that the other three cars are similar to FGE32194 and on account of engine being attached to the string of cars, I did not examine any other cars today. I will examine tomorrow the remaining three cars and if they are as Mr. Pierce [says] similar to 32194, I cannot see any reason why you shouldn't accept these five cars of oranges.

"Yours truly,
"JBV/AV          John B. Valente."

To this letter, so far as appears, there was no answer. The trial judge admitted it in evidence over the objection of the defendant, and it constitutes the subject-matter of the fifth assignment. During the course of the argument, plaintiff's counsel commented on the fact that the defendant had not produced as a witness the Tom Pierce mentioned in Valente's letter.

■ It is a general rule, subject to important exceptions, that a letter, not part of a mutual correspondence and to which no answer is made, is not admissible in favor of the writer as evidence of the statements therein contained (Morris v. Norton [C. C. A.] 75 F. 912, 924; Callahan v. Goldman, 216 Mass. 234, 103 N. E. 687; Kumin v. Fine, 229 Mass. 75, 118 N. E. 187, 8 A. L. R. 1161); the reason being that a party to the action cannot make evidence for himself by writing a letter to the other party which the latter is not bound to answer (Gregory Consolidated Mining Co. v. Starr, 141 U. S. 222, 225, 11 S. Ct. 914, 35 L. Ed. 715; Fearing v. Kimball, 4 Allen [Mass.] 125, 126, 81 Am. Dec. 690).

■■ The record discloses that Valente, the writer of the letter, acted as a broker only. He did not hold any authority from plaintiff to negotiate a settlement of the controversy which had arisen. He was requested by defendant to make the inspection, and his report to defendant after the inspection had been made was a part of the transactions leading up to the final refusal of the defendant to accept the merchandise and the action of the plaintiff following such rejection. This made him a factor in the negotiations for settlement. Moreover, there was competent evidence from other sources tending to show that Valente had been requested to make the inspection, that he had inspected two cars and that the results of the inspection were as stated in the letter, that he had later inspected the remaining three cars and had found those in a similar condition. These facts do not appear to have been in dispute. In view of this situation, it is difficult to see how defendant was hurt by the admission of the letter in evidence. Its admission affords no sufficient grounds for a reversal. The same may be said respecting the comment of plaintiff's counsel, in his closing argument, upon the failure of defendant to call as a witness its employee who had participated with Valente in the examination of the oranges shortly after they had arrived.

■ The next assignment to be considered is the ninth assignment which relates to the testimony of one Steinbauer, a federal fruit and produce inspector. During the course of the trial, the plaintiff had relied upon certificates of United States inspectors and the testimony of the inspector Mr. Payne, who was in charge of the Boston office at the time the oranges arrived. Mr. Lord, of the defendant corporation, had on cross-examination given testimony tending to impeach the fairness and intelligence of Payne as an inspector. Other of the defendant's witnesses sought to bring out that the trade generally treated the government inspections lightly. Mr. Steinbauer was called in rebuttal and when on the stand he was asked, over the objections of the defendant, whether or not he knew anything in regard to his (Payne's) competency as an inspector, to which he replied that everyone in the service regarded Mr. Payne as one of the best inspectors. The defendant invokes the familiar rule of evidence that when, on cross-examination, a witness is questioned upon collateral matters, the party interrogating cannot contradict the answers and thus raise an immaterial and foreign issue. Alexander v. Kaiser, 149 Mass. 321, 21 N. E. 376; Fisk v. Fisk (Mass.) 160 N. E. 274. But the evidence of Steinbauer was offered to meet, not only the testimony of Lord in cross-examination, but the testimony of other witnesses, and, furthermore, the issue upon which the question had a direct bearing was not an immaterial or foreign issue. If the defendant had seen fit to minimize the value as evidence of the government inspectors, it was surely open to the plaintiff to meet this attack by the same kind of evidence as that to which the defendant had resorted. While we think that the trial judge, in the exercise of his discretion, might with propriety have excluded the question and answer, yet in view of the foregoing we cannot say that there was error.

■ The twelfth and thirteenth assignments relate to the refusal of the judge to instruct the jury according to the following requests:

(5) "If you find that the contract between the plaintiff and the defendant was for the sale and purchase of oranges of a certain quality, and that the oranges shipped were not of that quality, but were in fact of a quality that passed inspection as United States grade number one oranges, then the plaintiff is not entitled to recover and your verdict must be for the defendant.

(6) "If the contract between the plaintiff and the defendant was for the sale of fancy oranges, and the oranges shipped were not fancy oranges, but were of the grade known as United States grade number one, then your verdict must be for the defendant."

We see no prejudicial error in the failure of the judge to give these instructions. The principal defense set up to the action was that the sale was one by sample, rather than by description, and that the oranges which were delivered did not come up to the sample. The plaintiff, on the other hand,

contended that the oranges were sold by description and that the seller's obligations were discharged by the delivery of merchantable oranges which answered that description.

The contentions of the parties, with the resultant issues of fact, were clearly stated to the jury, and they were told in substance that, if the plaintiff had shown the defendant a sample of fancy oranges labeled, "Yours Truly," and was told that the oranges sold under that name were of the class represented by the sample, then it would be wrong for the plaintiff to ship goods of an inferior quality under the same trade-name, and the words, "'Yours Truly' brand," used in the contract, would, under the conditions mentioned, contain a representation of quality; but if the jury found that the oranges were not sold with any representation of quality, but were sold by description only, and were of a fairly merchantable quality, then the terms of the contract in this respect were fulfilled.

These statements to the jury were correct and fully covered the situation. By their verdict the jury probably found, as they well might have, that the oranges were sold, not by sample, but by description, and that they were of a fairly merchantable quality.

The fourteenth and last assignment of error deals with a portion of the judge's charge with regard to the weight that is to be given certificates of inspection issued by the United States Department of Agriculture. The portion of the charge to which the defendant has objected reads as follows:

"Reference has been made in the testimony and in the arguments of counsel to the certificates of inspection by the inspectors of the United States Department of Agriculture. Those certificates are prima facie evidence of all the facts and statements therein contained, but they are not conclusive evidence and may be controlled or rebutted by other credible evidence in the case. And unless you find that there was a custom or usage in the fruit trade to accept them as decisive and conclusive to the extent that it would be a breach of the usages of the trade among those engaged therein, the facts stated in the Government certificate are open to rebuttal and it is wholly for the jury to say what weight they will give to them as testimony. Prima facie evidence is a legal term meaning that the facts stated in the certificates are taken to be true unless overcome by other evidence of a credible and satisfactory character."

We think that all that the trial judge had in mind was to say to the jury that, in the absence of a usage or custom of the trade to treat the certificates as conclusive, they would be open to rebuttal, and for the jury to attach to them such weight as they saw fit. If, as the defendant contends, there was no evidence warranting the jury in finding any such custom or usage, we are unable to say how any harm resulted to the defendant by this statement of the judge. Moreover, there was testimony brought out in the course of the cross-examination of one of the defendant's witnesses that it was a well-settled custom and usage among fruit and produce dealers in the case of dispute over quality or condition, to call for and abide by a government inspection.

While the statement of this witness was somewhat weakened in redirect examination and would create a reasonable doubt as to the existence of the custom in the Boston market, there was still some evidence of such a custom, and the jury were, in effect, properly instructed that the certificates would be treated only as prima facie evidence of the statements therein contained unless there existed a custom which made them conclusive.

The assignments of error argued by counsel and not noted above present no grounds for reversal.

The judgment of the District Court is affirmed, with costs to the appellee.