T.C. Memo. 1995-513

UNITED STATES TAX COURT

JAMES K. WISE AND CLAUDIA R. WISE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18958-92.                    Filed October 26, 1995.

<u>Mario A. Mata</u>, for petitioners.

<u>Carl D. Inskeep</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined a deficiency in and
additions to petitioners' Federal income tax as follows:

|  |  | Additions to Tax | | | |
|  |  | Sec. | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6651(a)(1)</u> | <u>6653(a)(1)</u> | <u>6653(a)(2)</u> | <u>6661(a)</u> |
| 1985 | $35,693 | $8,881.50 | $2,276.30 | [1] | $8,923 |

[1] 50 percent of the interest due on the portion of the underpayment attributable to negligence.

The issues for decision are: (1) Whether petitioners are entitled to deductions for business bad debts. We hold that they are to the extent stated herein. (2) Whether petitioners are entitled to interest expense deductions in excess of the amounts allowed by respondent. We hold that they are to the extent stated herein. (3) Whether petitioners are liable for the addition to tax under section 6651(a)[1] for failure to timely file their Federal income tax return. We hold that they are liable. (4) Whether petitioners are liable for the addition to tax under section 6661(a) for substantial understatement of income tax. We hold that they are to the extent stated herein. (5) Whether petitioners are liable for the addition to tax under section 6653(a) for negligence. We hold that they are liable.

## FINDINGS OF FACT

The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioners resided in San Marcos, Texas. Petitioners filed a Form 1040, U.S. Individual Income Tax Return, using the status "married filing joint", for the year at issue. References to petitioner are to James K. Wise.

---

[1]All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Prior to 1980, petitioner was in the banking business. He served as president and executive vice president of the First National Bank of San Marcos, Texas, from July 1973 until August 1980. After terminating his employment with the bank, petitioner became involved in the oil and gas business. He formed a number of partnerships and joint ventures with various individuals.

National Resources Oil Co. (NROC)

NROC was formed pursuant to the Texas Uniform Partnership Act by petitioner, Wilbur Wood (Wood), and Carlos Klutts (Klutts). Initially, NROC was involved in drilling and operating oil and gas wells for various partnerships and joint ventures formed by petitioner and his business associates. Petitioner had financial responsibilities as well as operational responsibilities for NROC. Petitioner withdrew $10,000 per month as a draw from the partnership.

NROC drilled approximately 80 to 90 wells in the Luling, Texas, area. Of these, approximately 36 wells were drilled and operated for seven partnerships formed by petitioner, Klutts, Wood, and other individuals.

During 1980, NROC was experiencing difficulties in obtaining pipe, tubing rods, pump jacks, and other oil and gas inventory due to the high demand for such products. To finance its purchases of inventory, NROC and its partners entered into a series of loan transactions with First State Bank of Weimar (Weimar Bank), resulting in an aggregated indebtedness on October

6, 1980, to Weimar Bank of $297,800.  On October 6, 1980, the partners of NROC executed guaranty agreements with respect to the indebtedness to Weimar Bank.  On October 12, 1982, the indebtedness was increased by $2,200 to $300,000.

Wise Oil Co.

Petitioner was also a partner in Wise Oil Co. (Wise Co.), with Klutts, Wood,[2] and John Heger (Heger).[3]  Heger was president and chairman of the board of Weimar Bank during 1980 and 1983. During 1980 and 1981, Wise Co. borrowed money to finance its oil and gas operations from Victoria Bank & Trust (Victoria Bank), resulting in an aggregated indebtedness in the amount of $645,902.  Petitioner signed promissory notes to Victoria Bank in different capacities, including individually and as a partner of Wise Co.  The partners of Wise Co. guaranteed repayment of the borrowed funds to Victoria Bank.

AMROC Energy Corp.

On August 11, 1981, petitioner and his partners and coventurers organized AMROC Energy Corp. (AMROC), a Texas corporation.  In connection with the formation of AMROC, the corporation participated in a private placement of its stock

---

[2]    Wood sold his interest to Kenneth W. Eubanks in July 1981. Eubanks paid Wood $5,000 cash, executed a promissory note in the amount of $95,000, and agreed to assume all of the partnership's indebtedness allocable to such interest.

[3]    Petitioner was also involved in seven other entities, each comprising four partners--petitioner, Klutts, Wood, and one other individual.

designed to raise working capital for the newly organized corporation. Petitioner was president, chief executive officer, and chairman of the board of AMROC. Petitioner was paid a salary of $3,000 per month from AMROC.

Sometime in 1981, all of the assets (except one piece of real estate) and liabilities of NROC along with the assets and liabilities of Wise Co. and the other partnerships and joint ventures were transferred into AMROC. The liabilities transferred to AMROC included the NROC note to Weimar Bank and the Wise Co. notes to Victoria Bank. In December 1981, petitioner and Klutts borrowed $300,000 from First National Bank of San Marcos and lent this amount to AMROC.

During the early part of 1982, AMROC could not make payments on its outstanding debts. In June 1982, petitioner severed his employment with AMROC when the corporation could no longer pay his salary. The corporation was insolvent by December 1982. Some of the assets of the partnerships and joint ventures that had been transferred to AMROC in 1981 were transferred, in 1982, back to some of the former partners and joint venturers. AMROC ceased doing business.

H & W Energy Corp.

The assets that AMROC had received from Wise Co. were transferred to H & W Energy Corp. (H & W), a partnership formed by Heger and Wood. Heger and Wood assumed the liabilities to Victoria Bank that had originated from Wise Co.

Weimar Bank Indebtedness

In April 1983, the $300,000 debt, plus accrued interest of $22,553.42, to Weimar Bank matured. At the time of maturity, the obligors on the loan were Wood, Klutts, and petitioner. Unable to pay off the loan, the obligors and Weimar Bank entered into another loan agreement (referred to as a renewal agreement), effective April 26, 1983. As a condition for renewal, the bank required payment of the accrued interest and a pledge of collateral. Because the obligors could not make a payment, Heger arranged for Klutts and petitioner to borrow $52,553.42 from Weimar Bank (loan #2). Of that amount, $22,553.42 was applied as payment of the accrued interest on the original indebtedness. The balance, $30,000, was transferred to the National Bank of Commerce to pay a secured debt owed by Wood. The collateral on the secured debt, certain oil and gas wells in which Wood had an interest, was then released. Thereafter, the oil and gas wells were pledged as collateral on the original Weimar Bank indebtedness.

By April 1983, petitioner and his partners were substantially in debt. Eventually, Wood and petitioner had approximately $3 million in personal liability on debts incurred in connection with the various partnerships and joint ventures. Wood's indebtedness at Weimar Bank reached such a high level that the bank would not give him any additional financing.

In January 1985, a restructuring of the Weimar Bank loan took place. On January 25, 1985, a new promissory note to Weimar Bank in the amount of $400,000 was executed by petitioner and Klutts. The new note represented a consolidation of: $200,000 of the original indebtedness (two-thirds of $300,000, i.e., the amount allocated to Klutts and petitioner); $6,877.73 representing petitioner's and Klutts' share of accrued interest on the original indebtedness; $53,919.44 representing the principal, plus accrued interest on loan #2; $41,046.73 representing a separate personal obligation of Klutts to Weimar Bank; and $100,000 which was applied to the debt owed by Wise Co. to Victoria Bank. The total interest financed or refinanced through the $400,000 loan was $30,797.17.[4] In April 1985, a payment of $53,189 was made on the $400,000 obligation.

Debt to Mrs. F.K. Wise

Petitioners executed a promissory note, dated August 15, 1975, to Mrs. F.K. Wise, the mother of petitioner. The note was in the original amount of $37,624 and provided that installment payments of $3,000 would be made annually in August. On August 21, 1985, petitioner signed a check for $6,000 payable to Mrs.

---

[4] Specifically, the $400,000 consolidation note included the financing or refinancing of $6,877.73 of accrued interest on the original loan, $3,366.02 of accrued interest on loan #2, and $20,553.42 representing the remaining balance of the $22,553.42 accrued interest financed on loan #2, less a payment of $2,000 made on the principal of the loan in December 1983.

F.K. Wise.  The amount included the annual installment payment of $3,000, due in August 1985, and an additional amount of $3,000. The interest due at the time of the 1985 installment payment was $2,773.

On their Federal income tax return for 1985, petitioners claimed deductions for business bad debts as follows: Miscellaneous--$1,545; Texaroda--$30,000;[5] Wood--$53,919; and Heger and Wood--$50,000.[6]

Petitioners delivered their 1985 Federal income tax return to an individual who came to San Marcos to pick up tax returns for filing with the Internal Revenue Service (IRS).

OPINION

Issue 1. Bad Debt Deductions

Respondent disallowed all of petitioners' bad debt deductions claimed on their 1985 Federal income tax return. Petitioners argue that petitioner was liable as guarantor for business-related debts of the various oil and gas entities, and consequently they are entitled to deductions for payments made on the entities' obligations.  Furthermore, petitioners claim that a business-related debt owed to petitioner became worthless in 1985.

---

[5]    On their amended Federal income tax return for 1985, petitioners reduced this deduction to $15,000.

[6]    This deduction was claimed on petitioners' amended return.

Miscellaneous Deduction--$1,545

Petitioners assert that petitioner made a $1,000 payment on a $20,000 debt owed to Texas Commerce Bank. Petitioners assert that the debt was part of the liabilities transferred from Wise Co. and assumed by AMROC. Respondent argues that the loan is not deductible on a number of grounds, including that the payment was not substantiated, the debt was not business related, and petitioners merely paid their own debt.

As a general rule, taxpayers bear the burden of proving the Commissioner is incorrect in her determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Furthermore, deductions are strictly a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Moreover, an obligor's repayment of loan proceeds generally cannot be deducted as a bad debt. Dreyfuss v. Commissioner, 140 F.2d 922 (5th Cir. 1944), affg. a Memorandum Opinion of this Court; Perry v. Commissioner, 92 T.C. 470, 479 (1989), affd. 912 F.2d 1466 (5th Cir. 1990); Estate of Schwehm v. Commissioner, 17 T.C. 1435 (1952).

The only evidence in the record pertaining to this debt is a promissory note in the amount of $20,000. Texas Commerce Bank is the payee, and John Heger and petitioner signed as makers of the note. Wise Co. is not listed as maker, nor is it referred to on the note. Accordingly, the loan transaction appears to be one in which petitioner is the primary obligor. Furthermore, petitioner has not presented any evidence, other than his uncorroborated testimony, that any payment was made on the note. Accordingly, we sustain respondent's disallowance.

### Texaroda Deduction--$15,000

Petitioner asserts that the transfer of funds from Weimar Bank to the National Bank of Commerce satisfied a debt owed by Wood and/or a related entity, Texaroda Oil Co.; that Wood acknowledged the resulting indebtedness to petitioner; and that the debt was worthless by December 31, 1985. Respondent argues that the debt is not deductible because there was no bona fide debt; petitioner has not substantiated payment; petitioner has not proven worthlessness in 1985; and the debt was not business related.

To be entitled to a bad debt deduction under section 166(a)(1), a taxpayer must show that the debt became wholly worthless in the year in which it is claimed. Millsap v. Commissioner, 46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968). Worthlessness is a question of fact. Sec. 1.166-2(a),

Income Tax Regs. A debt becomes worthless in the year in which identifiable events clearly mark the futility of any hope of further recovery. James A. Messer Co. v. Commissioner, 57 T.C. 848, 861 (1972). Taxpayers bear the burden of proving the worthlessness of debt in the year it is claimed. Perry v. Commissioner, 22 T.C. 968, 973 (1954).

The value of the collateral, if any, securing the debt must be considered in determining whether a debt is worthless. Sec. 1.166-2(a), Income Tax Regs. Moreover, the debt cannot be worthless until the security itself becomes worthless. LeRoy v. Commissioner, 4 T.C. 70 (1944), affd. 152 F.2d 936 (2d Cir. 1945); Hubble v. Commissioner, T.C. Memo. 1981-625. Taxpayers have the burden of proving the collateral is worthless. Rule 142(a); Turbeville v. Commissioner, 31 B.T.A. 283 (1934), affd. on other grounds 84 F.2d 307 (5th Cir. 1936).

Petitioner and Klutts were liable to Weimar Bank for the $30,000, and the Texaroda oil wells were considered collateral on that loan. Therefore, the substance of the transaction wherein Weimar Bank transferred $30,000 to National Bank of Commerce and received back property in the form of Texaroda oil wells was a loan by petitioner and Klutts to Wood with the oil wells serving as collateral on that loan. Thereafter, petitioner and Klutts transferred the oil wells to Weimar Bank to serve as collateral on their loan.

In order for petitioners to claim a bad debt deduction, they must show that the debt and the collateral were worthless in tax year 1985. Wood was in severe financial distress prior to tax year 1985; he had $3 million of debt from his partnership transactions and $1 million of other debt, judgments were being entered against him, and he could not get any additional financing from the bank. Petitioners have not met their burden of proving that the debt became worthless in 1985. Furthermore, petitioners have not presented any evidence as to when, if at all, the collateral became worthless.

Based on the evidence presented, we find that petitioners failed to sustain their burden of proving that the debt became worthless in the year at issue. Accordingly, we sustain respondent's disallowance.

Victoria Bank Bad Debt Deduction--$50,000

Petitioners claim that they are entitled to a $50,000 bad debt deduction when the Victoria Bank debt was paid through the restructuring of the Weimar Bank debt. Respondent disallowed the bad debt deduction on a number of grounds.

Petitioners' argument on this issue is vague and ambiguous. On brief, petitioners merely argue against respondent's assertions. Furthermore, we find that petitioners have not proven that the payment was made other than in petitioner's capacity as primary obligor on the debt. Accordingly,

petitioners are not entitled to a bad debt deduction for merely making repayment of loan proceeds. Dreyfuss v. Commissioner, supra; Perry v. Commissioner, 92 T.C. at 479; Estate of Schwehm v. Commissioner, supra. To the extent petitioner made payment on behalf of Heger and Wood, petitioners have not met their burden of proving that the resulting debt owed to them was worthless in the year at issue. Millsap v. Commissioner, supra. Accordingly, we sustain respondent's disallowance.

### Wood Bad Debt Deduction--$53,189

Petitioners claimed a bad debt deduction in the amount of $53,189 for payment relating to the Weimar Bank indebtedness. Respondent makes a number of arguments in support of her disallowance.

Petitioners' primary argument is that petitioner, as guarantor, made the payment in the course of his trade or business, and is, therefore, entitled to a business bad debt under section 166. To this end, petitioners devote a substantial part of their brief to making a distinction between business and nonbusiness bad debts.

Section 166 allows a deduction for the loss suffered on account of a bad debt. A deduction is allowed to the extent that the debt became worthless within the taxable year. Sec. 166(a). A loss sustained by a guarantor unable to recover from the debtor is a loss from a bad debt. Putnam v. Commissioner, 352 U.S. 82

(1956); <u>Black Gold Energy Corp. v. Commissioner</u>, 99 T.C. 482, 486 (1992), affd. without published opinion 33 F.2d 62 (10th Cir. 1994). In <u>Putnam</u> the Court explained:

> The reality of the situation is that the debt is an asset of full value in the creditor's hands because backed by the guaranty. The debtor is usually not able to reimburse the guarantor and in such cases that value is lost at the instant that the guarantor pays the creditor. But that this instant is also the instant when the guarantor acquires the debt cannot obscure the fact that the debt "becomes" worthless in his hands. [<u>Id.</u> at 89.]

Furthermore, this Court has interpreted <u>Putnam</u> and held that "payments in discharge of a guaranty are normally to be <u>treated as</u> bad debt losses." <u>Martin v. Commissioner</u>, 52 T.C. 140, 144 (1969), affd. 424 F.2d 1368 (9th Cir. 1970). Whether a guarantor achieves technical subrogation or not, the guarantor's loss arises by virtue of the worthlessness of the debtor's obligation to the guarantor. <u>Black Gold Energy Corp. v. Commissioner</u>, <u>supra</u> at 487.

Losses of guarantors are subject to particular conditions of deductibility. <u>Id.</u>; sec. 1.166-9, Income Tax Regs. Section 1.166-9(a), Income Tax Regs., provides in relevant part:

> Subject to the provisions of paragraphs (c), (d), and (e) of this section, a payment of principal or interest made during a taxable year beginning after December 31, 1975, by the taxpayer in discharge of part or all of the taxpayer's obligation as a guarantor, endorser, or indemnitor is treated as a business debt becoming worthless in the taxable year in which the payment is made * * *.

One of respondent's grounds for disallowance is that petitioner has not proven that he made the $53,189 payment. The evidence presented in this case includes a loan history statement from Weimar Bank. The $53,189 is reflected as payment made on the Weimar Bank indebtedness. Furthermore, petitioner presented evidence in the form of a letter, directing payment of a commission (owed petitioner from a title company in an unrelated real estate sale) in the amount of $53,189 to Weimar Bank. Moreover, the evidence includes a copy of a check payable to Weimar Bank on behalf of petitioner from Capitol of Texas Title Company--escrow account, in the amount of $53,189. Accordingly, we find that petitioner did make the $53,189 payment.

Respondent's next argument is that the payment did not give rise to a bad debt deduction because petitioners have not proven that their right to subrogation against Klutts, the other guarantor, was worthless. A requirement for a bad debt deduction is that the guarantor must be unable to recover from the debtor. See Putnam v. Commissioner, supra.

It is unclear that petitioner's payment of part of his obligation as guarantor on the Weimar Bank indebtedness is treated as a bad debt becoming worthless in the year of payment. Sec. 1.166-9(a), Income Tax Regs. However, the $53,189 payment was made as co-guarantor of the Weimar Bank debt. Accordingly, petitioner has rights against Klutts, his co-guarantor for 50

percent of the payment.  Petitioner has not proven that such right is worthless.  Sec. 1.166-9(e)(2), Income Tax Regs. Accordingly, we will consider only one-half of the $53,189 payment to be worthless and entitled to a bad debt deduction. However, we must now consider whether the debt is business or nonbusiness.

Respondent argues that petitioner is not entitled to a business bad debt because petitioner did not incur the debt in the course of his trade or business.

We have held that payments made by partners on behalf of their partnerships were business bad debts where the partners' payments were in furtherance of the partnership business.  Butler v. Commissioner, 36 T.C. 1097, 1106 (1961); Davis v. Commissioner,  11 T.C. 538 (1948); Stanchfield v. Commissioner, T.C. Memo. 1965-305.

The payment at issue relates to the loan agreement entered into between petitioner, Klutts, and Weimar Bank in 1985.  At that time, petitioner was no longer in the oil and gas business. There is evidence in the record that petitioner subsequently went into the real estate sales business.  Notwithstanding the terminology used to describe the 1983 agreement as a "renewal" of the original loan entered into in 1980, when arguably petitioner was in the oil and gas business, the plain fact is that the 1985 agreement was a separate and distinct agreement.  The 1985 loan

consolidates other debt not part of the 1980 agreement,[7] and the principal amount of the debt is greater.  Accordingly, at that time, it cannot fairly be characterized as entered into in the course of petitioner's trade or business.  See Lair v. Commissioner, 95 T.C. 484 (1990).  Moreover, petitioners have not met their burden of proving that the 1980 guarantee and 1983 renewal were made in the course of petitioner's trade or business.  Accordingly, we hold that petitioners are entitled to a bad debt deduction in the amount of petitioner's proportionate share as coguarantor, and such deduction is to be treated as a nonbusiness bad debt.[8]

Issue 2. Interest Expense Deductions

---

[7] The $53,189 payment was applied against the $400,000 indebtedness to Weimar Bank.  The indebtedness was a consolidation and refinancing of several outstanding obligations on which petitioner and Klutts were liable to Weimar Bank(i.e., $206,877.73--representing two-thirds of the original $300,000 indebtedness of NROC plus accrued interest; $53,919.44 loan, with accrued interest, involving the Texaroda transaction--see supra p. 11; $41,046.73--an individual and separate obligation of Klutts; and $100,000--relating to the Victoria Bank loan--see supra p. 12).

[8] Although neither party addressed the issue of nonbusiness bad debts, sec. 1.166-9(b), Income Tax Regs., applies to taxpayers who enter into a transaction for profit, but not in the course of their trade or business.  That section provides in relevant part:

> a payment of principal or interest made during a taxable year beginning after December 31, 1975, by the taxpayer in discharge of part or all of the taxpayer's obligation as a guarantor, endorser, or indemnitor is treated as a worthless nonbusiness debt in the taxable year in which the payment is made * * *.

Respondent disallowed $3,775 of interest expense deductions claimed on petitioners' 1985 Federal income tax return. Petitioners argue that they are entitled to an interest expense deduction of $1,032 relating to a promissory note payable to petitioner's mother. Furthermore, in their opening brief petitioners claim additional interest deductions not taken on their tax return.

Section 163(a) allows cash basis taxpayers a deduction for "all interest paid * * * within the taxable year on indebtedness." Furthermore, cash basis taxpayers must capitalize prepaid interest and deduct such interest over the period to which it relates. Sec. 461(g).

Petitioners argue that the interest portion of the advance payment made on the promissory note was properly deducted in 1985. Petitioner conceded that the same amount was deducted in 1986; however such fact is irrelevant, because 1985 is the year at issue. Respondent does not dispute this fact; instead respondent argues that petitioner is getting a double deduction, and therefore it should be disallowed.

We do not decide whether petitioners have erroneously taken a deduction in 1986, because that year is not before us. Instead we look to whether petitioners properly deducted the interest payment in 1985. Since petitioners apportioned the amount of interest from the due date of the payment until the end of tax

year 1985, and they deducted only that amount, petitioners' interest expense deduction was proper.  Accordingly we sustain petitioners as to the $1,032 interest expense deduction.

With regard to the additional interest deductions, we have considered petitioners' arguments and find them to be without merit.

Issue 3. Addition to Tax--Failure To Timely File

Respondent has determined an addition to tax under section 6651(a) for failure to file timely a Federal income tax return for the tax year 1985.

In the case of a failure to file an income tax return within the time prescribed by law, section 6651(a)(1) provides for an addition to tax in the amount of 5 percent of the tax required to be shown on the return for each month (or part thereof) during which such failure continues, but not to exceed 25 percent in the aggregate.  See sec. 301.6651-1(a)(1), Proced. & Admin. Regs. The taxpayer is not liable for the addition to tax if the failure to file is due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Stovall v. Commissioner, 762 F.2d 891, 895 (11th Cir. 1985), affg. T.C. Memo. 1983-450.  Taxpayers have the burden of proving that their late filing of their return was due to reasonable cause.  Adamson v. Commissioner, 745 F.2d 541

(9th Cir. 1984), affg. T.C. Memo. 1982-371; <u>Abramo v. Commissioner</u>, 78 T.C. 154, 163 (1982).

Section 7502(a) provides that when a return is delivered by U.S. mail to the IRS office to which such return is required to be filed after the date prescribed for its filing, the date of the U.S. postmark stamped on the envelope in which the return is mailed is deemed to be the date the return is delivered to the IRS. <u>Walden v. Commissioner</u>, 90 T.C. 947, 952 (1988). Section 7502(c) provides that if a return is sent by U.S. registered or certified mail, the registration or certification is prima facie evidence that the return was delivered to the IRS office to which addressed. See <u>Walden v. Commissioner</u>, <u>supra</u> at 952; sec. 301.7502-1(d)(1), Proced. & Admin. Regs. And when taxpayers do not use registered or certified mail, they must assume the risk of nondelivery of the return to the IRS. <u>Walden v. Commissioner</u>, <u>supra</u> at 952; sec. 301.7502-1(c)(2), Proced. & Admin. Regs.

Petitioners requested an extension to file their 1985 Federal income tax return and remitted a payment of $10,000 along with their extension request. Petitioners' 1985 Federal tax return was due April 15, 1986, or if properly extended, no later than October 15, 1986. Secs. 6081(a), 6651(a)(1); sec. 1.6081-1(b), Income Tax Regs. However, there is no record that their 1985 Federal income tax return was filed until July 29, 1988. Petitioners did not mail their 1985 Federal income tax return by

registered or certified mail.  Instead, they entrusted it to an individual for delivery.  Accordingly, petitioners must assume the risk of nondelivery of their return to the IRS.  Furthermore, petitioners have not met their burden of proving that the late filing was due to reasonable cause.

Accordingly, we hold that petitioners are liable for the addition to tax under section 6651(a)(1).

Issue 4. Addition to Tax--Substantial Understatement of Income Tax

Respondent has determined an addition to tax under section 6661(a) for substantial understatement of income tax for the year at issue.

Section 6661(a) imposes an addition to tax on a substantial understatement of income tax.  The section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement.  Sec. 6661(a).  The taxpayer bears the burden of proving that the Commissioner's determination as to the addition to tax under section 6661(a) is erroneous.  Rule 142(a).

An understatement is substantial where it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6661(b)(1)(A).  An understatement is the difference between the amount required to be shown on the return

and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). The section 6661 addition to tax is not applicable, however, if there was substantial authority for the taxpayer's treatment of the items in issue or if relevant facts relating to the tax treatment of those items were disclosed on the return. Sec. 6661(b)(2)(B)(i) and (ii).

Neither exception applies here. If the recomputed deficiency under Rule 155 satisfies the statutory percentage or amount, petitioners will be liable for that addition to tax.

Issue 5. Addition to Tax--Negligence

In her notice of deficiency, respondent determined that petitioners were liable for additions to tax under section 6653(a) for negligence.

Section 6653(a)(1) provides for an addition to tax of 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax of 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules or regulations.

Negligence under section 6653(a) is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85

T.C. 934, 947 (1985) (quoting <u>Marcello v. Commissioner</u>, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). The taxpayer has the burden of proving that the Commissioner's determination of the additions to tax under section 6653(a) is erroneous. Rule 142(a); <u>Bixby v. Commissioner</u>, 58 T.C. 757 (1972).

Petitioners have not presented evidence to establish that they were not negligent or did not disregard rules or regulations. Petitioners did not maintain records, as required by law, and failed to sustain their burden of proof on the disputed issues. On this record, we sustain respondent's determination that petitioners are liable for the additions to tax under section 6653(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>